Jesse C. SMOOT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17081.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 14, 1962.

Decided Dec. 27, 1962.

Mr. Joseph S. McCarthy, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Barry Sidman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson, Asst. U. S. Atty., at the time the brief was filed, and Donald S. Smith, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and WRIGHT, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The first count of an indictment charged Wayne C. Spitzer with knowingly transporting a stolen motor vehicle in interstate commerce.[1] The second count accused Jesse C. Smoot of aiding and abetting him in the commission of that crime. At their joint trial, the jury found Spitzer not guilty by reason of insanity, but found Smoot guilty as charged. The latter appeals.

Evidence for the prosecution showed the car had been stolen in Jacksonville, Florida, September 5, 1961, and that, when it was discovered by police in the District of Columbia early in the morning of September 7, Spitzer and a girl were inside the car and Smoot was standing nearby. Each man said it belonged to the other. As they could produce no certificate of registration or other evidence of ownership, Spitzer and Smoot were taken into custody.[2]

On the way to the police station, Smoot told an officer he had driven the car a part of the way after he knew it had been stolen. Sergeant Lyons, an officer at headquarters, testified that Spitzer and Smoot admitted to him in the presence of each other that Spitzer told Smoot in South Carolina he had stolen the car in Florida. That is to say, Sergeant Lyons said Smoot repeated his confession in Spitzer's presence and "admitted very readily that he knew the car

was stolen." Then, at Sergeant Lyon's request, Spitzer repeated his confession in Smoot's presence, including the statement that he had told Smoot it was a stolen car. That Smoot did not reply to these statements of Spitzer is explained by the fact that he himself had just finished making the same statements. So, although Smoot made the admission of guilty knowledge just before, instead of just after, Spitzer said he told him he had stolen the car, it cannot be said he was silent with respect to Spitzer's accusation; he agreed with it by anticipating it. Police officers also testified that both men told them the heater, the spare tire and certain articles of clothing were sold to pay for gasoline and other necessities.

After Spitzer and Smoot had been taken before a United States Commissioner, they repeated their admissions to two agents of the Federal Bureau of Investigation who by that time had entered the case. Smoot signed before them the following confession which was received in evidence:

"I, Jesse Clarence Smoot, furnish the following voluntary statement to Special Agents Robert F. Robinson, Jr., and Herbert Briick who have identified themselves to me as Special Agents of the Federal Bureau of Investigation. I have been advised of my right to counsel, that I do not have to make any statement and that it can be used against me in a court of law. No promises or threats have been made to me in order to obtain this statement.

"I was born April 3, 1936 at Augusta, Georgia. On 9/2/61 I started hitch-hiking [*sic*] from Muskogee, Oklahoma, traveled to Houston, Texas, Tuscaloosa, Alabama, Montgom-

---

1. This is denounced by the Dyer Act, which provides in 18 U.S.C. § 2312:
   "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,-000 or imprisoned not more than five years, or both."

2. The owner later identified the automobile and testified that the heater and spare tire had been removed and that old hub caps had been substituted for those originally attached to the wheels.

ery, Alabama and arrived at Folkston, Georgia where I was hitchhiking about midnight, Tuesday 9/5/61. At approximately 5 AM, 9/6/61 I was picked up by a male driving a green, 2 door Chevrolet Sedan bearing Florida tags. I was picked up at the junction of U. S. 1, 301 & 23. This driver told me his name was Spitzer and that he was driving to Washington, D. C. I told Spitzer I was going to Brooklyn, New York as I have an uncle who lives there.

"While still driving north in Georgia, Spitzer told me he was broke and would have to work his way to Washington. He also told me he had no papers for this car when I became suspicious and when we were in South Carolina Spitzer told me the car was stolen. I was not feeling well and let the subject drop.

"I drove this 1956 Chevrolet about 10 miles only when we were about 75 miles south of Washington, D. C. Spitzer drove the car on all other occasions except for short period [sic] when I drove the car near Anacostia Drive.

"We arrived in Washington, D. C. about 2 AM 9/7/61, drove around town until around 3:30 AM when we picked up a girl near a White Tower restaurant. We drove to someplace [sic] near the Potomac River where we went to sleep, the girl and I, on the grass near the Chevrolet. I was awakened about dawn and saw a Negro standing over me, another Negro was standing nearby. I yelled and they both ran off. I awoke Spitzer and we got in the car and tried to find these Negroes as they took $15.00 from my wallet and my California drivers permit. We were unable to find them so we returned to the same place and explained [the] theft to police who had arrived. Subsequently we were taken to Park Police Headquarters in Washington,

D. C. where I told them how I had been picked up by Spitzer in Georgia and my knowledge concerning his theft as set out above.

"During the trip north from Georgia Spitzer and I sold the spare tire obtained from the trunk of this Chevrolet by removing the back seat. We also sold the car's heater to a small garage located north of Four Oakes, North Carolina. The tire was sold to a service station located north of Raleigh, North Carolina. I also sold personal clothing to individuals working in various gas stations in North and South Carolina.

"I have read the above statement consisting of 2½ pages and it has been read to me. It is true and correct to the best of my knowledge. I have initialled all corrections and the bottom of each page."

At the trial, Smoot testified substantially in accordance with his written confession except he denied he knew the car was stolen and denied telling the officers he had that guilty knowledge. His denials were not all unequivocal.[3] Thus he admitted from the witness stand all the elements of the crime and the attending circumstances except the element of *scienter*. Three different sets of officers said he admitted that element to them and, as seen above, the written confession contained an admission that he knew the car had been stolen. So, the jury had the task of comparing the credibility of the opposing witnesses,— of deciding whether they should believe the officers or Smoot as to his alleged statements that he knew it was a stolen car. In this connection, it is noted that Smoot admitted from the stand that he had been twice convicted of interstate transportation of a stolen motor vehicle: in Indiana in 1956 and in Arizona in 1958. As we have indicated, the jury rejected Smoot's denial of guilty knowledge.

---

3. He said at one point in his testimony, " * * * I don't recall that I ever said the auto—that I had known the auto to have been stolen."

On appeal, Smoot argues vigorously that the officers' testimony concerning his confessions of guilty knowledge was not sufficient to support a conviction because, he says, his alleged admissions of that necessary element of the crime were not corroborated at all. The principal question is, therefore, whether the admissions of guilty knowledge contained in the confessions were sufficiently corroborated. The Supreme Court has not been specific as to what is sufficient corroboration of a confession to make it in all respects admissible, probably because the circumstances differ so widely from case to case that it is difficult, if not impossible, to announce a general rule in simple terms.

This court held in Forte v. United States, 68 App.D.C. 111, 115, 119, 94 F.2d 236, 240, 244, 127 A.L.R. 1120 (1937), that corroboration must consist of substantial evidence, independent of the accused's extra-judicial admissions, which tends to establish the whole of the *corpus delicti*. Speaking of that and other cases, the Supreme Court said in Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954):

> " * * * However, we think *the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the corpus delicti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. * * *" (Emphasis added.)

This pronouncement grows out of the general rule that an accused may not be convicted on his own uncorroborated confession. Smith v. United States, 348 U.S. 147, 152, 75 S.Ct. 194, 99 L.Ed. 192 (1954). The Supreme Court said, at page 153, 75 S.Ct. at page 197, that the rule is a justifiable "restriction on the power of the jury to convict." But it added, "Nevertheless, because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions

it imposes surpass the dangers which gave rise to them."

The Smith opinion continues thus, at pages 153 and 154, 75 S.Ct. at page 198:

> "The first issue is whether the requirement of corroboration may properly be applied to the crime of tax evasion. The corroboration rule, at its inception, served an extremely limited function. In order to convict of serious crimes of violence, then capital offenses, independent proof was required that *someone* had indeed inflicted the violence, the so-called *corpus delicti*. Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession. But in a crime such as tax evasion there is no tangible injury which can be isolated as a *corpus delicti*. As to this crime, it cannot be shown that the crime has been committed without identifying the accused. Thus we are faced with the choice either of applying the corroboration rule to this offense and according the accused even greater protection than the rule affords to a defendant in a homicide prosecution, Evans v. United States, [10 Cir.], 122 F.2d 461; Murray v. United States, 53 App. D.C. 119, 288 F. 1008, or of finding the rule wholly inapplicable because of the nature of the offense, stripping the accused of this guarantee altogether. We choose to apply the rule, with its broader guarantee, to crimes in which there is no tangible *corpus delicti*, where the corroborative evidence must implicate the accused in order to show that a crime has been committed. See, e. g., Tabor v. United States, [4 Cir.], 152 F.2d 254; United States v. Kertess, [2 Cir.], 139 F.2d 923; Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354; Pines v. United States, [8 Cir.], 123 F.2d 825; Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, [127 A.L.R. 1120]; Tingle v. United States, [8 Cir.], 38 F.2d

573; Wynkoop v. United States, [9 Cir.], 22 F.2d 799; Daeche v. United States, [2 Cir.], 250 F. 566."

In like manner, there is no tangible injury which can be isolated as the *corpus delicti* in the crime with which Smoot was charged—knowingly aiding and abetting in the interstate transportation of a stolen motor vehicle. That is to say, it cannot be shown that this crime was committed without identifying Smoot; in the language of the Supreme Court, "[T]he corroborative evidence must implicate the accused in order to show that a crime has been committed."

There was no unconfessed element which the prosecution had the burden of establishing by independent evidence; its task was to "bolster" the confession by independent evidence that it was trustworthy. When that was done, the confession was sufficient to convict as it covered all essential elements of the crime. The Supreme Court so held in Smith v. United States, supra, when it said, 348 U.S. at page 156, 75 S.Ct. at page 199:

> " * * * All elements of the offense must be established by independent evidence *or corroborated admissions,* but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused. * * * " (Emphasis supplied.)

■ We also learn from the Opper case, supra, that an incriminatory statement made by the accused need not be corroborated by independent evidence of the fact admitted, but that independent evidence showing the admission to be trustworthy is sufficient; and that the latter evidence may be different from and less than the former. From this we conclude that a complete confession need not be corroborated by independent evidence of all or any of the elements of the crime, but that it may be sufficiently substantiated by independent evidence of attending facts or circumstances from which the jury may infer the trustworthiness of the confession.

In this case, however, there was more: evidence independent of the confessions showed the car had been stolen, and that Smoot was with it two days later in a place far distant from the scene of the theft. Furthermore, evidence independent of his admissions of guilty knowledge established many circumstances indicating that he knew the car was stolen before he began to drive it.

For example, Smoot testified that Spitzer told him the car belonged to his uncle; yet he said the heater and the spare tire were sold during their trip. He said he knew Spitzer did not have a key to the trunk, yet denied knowing the tire had been taken from the trunk by tearing out the back seat. He contended it "was taken out of the trunk before he picked me up" and admitted the tire was "between the front and back seat." Smoot denied the back seat had been torn out, but the owner later testified it had been. If so, this was visible to Smoot. A person who is lawfully using an automobile does not tear out the back seat in order to get at the spare tire, and normally he does not travel with the spare tire between the front and the back seat. And ordinarily a young man driving his uncle's car does not sell accessories from it in order to pay his expenses.

■ All these circumstances, including the absence of a registration certificate, furnish abundant corroboration of Smoot's extra-judicial admissions that he knew the car was stolen. We hold, therefore that the confession was in all respects amply corroborated.

■ In view of the testimony by several officers of the complete oral and written confessions, denied only in respect to *scienter* by one whose credibility had been impeached by admissions of previous convictions, and in view of

the corroborating circumstances of his admitted participation in the two-day adventure, we think the jury was justified in concluding he knew the car had been stolen and that he so informed the officers.

Isaacs v. United States, 283 F.2d 587 (10th Cir., 1960), supports our conclusion. Isaacs was accused of transporting a revolver in interstate commerce, having previously been convicted of a crime of violence. 15 U.S.C. § 902(e). The weapon was found in Isaacs' motel room in Oklahoma and he admitted he had obtained it in Kentucky and transported it to Oklahoma. To show the trustworthiness of this statement, the Government produced independent evidence that the gun was taken from a store in Covington, Kentucky, at a time when Isaacs lived there. The Tenth Circuit held that the fact that the gun was shown to have been first in Kentucky and then in Isaacs' possession in Oklahoma was "strong corroborative proof of the trustworthiness of Isaacs' statement that he obtained the gun in Kentucky and brought it to Oklahoma." 283 F.2d at 589.

Smoot complains of the trial court's failure to charge the jury that Spitzer's extra-judicial admissions were not admissible against him. He did not request a charge on that subject and therefore cannot now assign its omission as error. Rule 30, Fed.R.Crim.P. Although we are authorized by Rule 52(b) to notice unassigned error, we are not inclined to do so here because the trial judge twice cautioned the jury, though not in the formal charge, that Spitzer's statements, not made in Smoot's presence, were not to be considered as evidence against the appellant.

Another reason for reversal advanced by appellant is that the trial court erred in not limiting to Spitzer alone the following portion of his charge to the jury:

"It is the law that the exclusive possession of recently stolen property unexplained is sufficient to support a verdict of guilty of larceny. That is, it is sufficient to indicate that the individual stole the automobile in this case."

Smoot was not charged with the theft of the car, nor with aiding and abetting in the larceny which Spitzer admitted; and the evidence did not in any way connect Smoot with the theft itself. It was clear that Spitzer stole the car in Florida the day before he picked up Smoot in Georgia. So, the jury could hardly have supposed that Smoot had actually stolen the automobile or aided and abetted in the theft. Smoot's possession, if any, was not "unexplained," and therefore could not have been considered by the jury as an indication that he had had a part in the original theft.[4] Appellant's brief expresses the apprehension that "this instruction without further limiting language" may have caused the jury to conclude he knew the car was stolen "from his *mere presence* at the scene of a stolen car * * *." See, Kemp v. United States, 114 U.S.App.D.C. ——, 311 F.2d 774. But here there was more than "mere presence." Smoot himself had testified that he drove the car during a part of the journey. We see no basis for appellant's fear of prejudice in this respect.

The evidence as a whole amply justified the jury's conclusion that Smoot was not an innocent guest of Spitzer, but knowingly aided and abetted him in the unlawful interstate transportation of the stolen motor vehicle.

Affirmed.

WRIGHT, Circuit Judge, concurs in the result.

---

4. This fact serves to distinguish McKnight v. United States, 114 U.S.App.D.C. ——, 309 F.2d 660, where the identical instruction was given. In any event, appellant did not object to the form of the instruction.