**UNITED STATES of America, Appellee,**

v.

**Mark A. DICKERSON, Appellant.**

No. 97–3143.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 13, 1998.

Decided Jan. 5, 1999.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant.

With her on the brief was A. J. Kramer, Federal Public Defender.

Gregory G. Marshall, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, United States Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Sima F. Sarrafan, Assistant United States Attorneys.

Before: SILBERMAN, GINSBURG, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant was convicted of possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1994). He appeals his conviction on the ground that the district court erroneously denied his request for a jury instruction that his out-of-court statement could not be used to convict him unless corroborated by substantial independent evidence. We affirm the conviction.

## I.

Appellant was driving his mother's minivan with two passengers in Southeast D.C. Officer John Cox noticed an expired inspection sticker on the minivan and pulled appellant over. Cox smelled burned marijuana when he approached the minivan to ask for appellant's license and registration, and observed what appeared to be loose marijuana on the floorboard. Cox then called for back-up and ordered all three individuals from the minivan. The officers discovered a gun, within appellant's reach from the front seat, located in an opening in the left wall of the passenger compartment where a panel had been pried apart about two inches from the metal frame of the minivan. Appellant was then handcuffed and a more extensive search of the car uncovered next to the gun an envelope addressed to "Mark" containing a birthday card and a photograph of appellant and a woman, as well as various correspondence marked for appellant in the "map pocket" on the back of the front passenger seat. As the officers led appellant from the scene, he asked why he had been arrested. Upon being told that it was because of the gun, he said that he had been "hijacked a couple of times," but also stated that he did not know the gun was in the minivan.

The district court denied appellant's motion for a judgment of acquittal at the close of the government's case. Before trial, appellant requested that the court give "Redbook" instruction 2.49, which tells the jury that the defendant cannot be convicted solely on his own out-of-court statements unless those statements are corroborated by "substantial independent evidence of facts or circumstances which tend to establish the trustworthiness of the statement."[1] The district court declined. Appellant was convicted and sentenced to 40 months of imprisonment.

Appellant challenges his conviction solely on the ground that the district court erred in rejecting his proposed jury instruction. He does not dispute that corroborative evidence was presented—that appellant was driving his mother's car and that the gun was within his reach and next to his personal effects—but he claims that the jury was entitled to decide if the corroborative evidence was sufficient. At certain points in his brief, appellant argues as if such an instruction is necessary in all cases involving a defendant's out-of-court statements. Yet, in other places appellant asserts the more narrow claim that where the evidence is so weak that the jury was likely to disregard that evidence and convict solely on the basis of an out-of-court statement, a corroboration instruction is required. The government responds that there is no requirement to give such an instruction in all cases, and that the district court properly exercised its discretion not to issue an instruction in this case because there was substantial independent evidence corroborating appellant's statement.

## II.

The Redbook instruction at issue in this appeal derives from a trio of Supreme Court cases setting forth the federal rule governing the use of a defendant's out-of-court statements to convict. The rule covers both con-

1. Instruction 2.49, Criminal Jury Instructions, Young Lawyers Section, The Bar Association of the District of Columbia (4th ed.1993).

fessions and admissions of facts that show essential elements of the crime. The Court held in pre-*Miranda* cases that a conviction cannot rest on a defendant's out-of-court statement made *subsequent* to the crime, whether exculpatory or inculpatory, unless the government produces substantial independent evidence which would tend to establish the trustworthiness of the statement. *Opper v. United States*, 348 U.S. 84, 92–93, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Smith v. United States*, 348 U.S. 147, 155–56, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *United States v. Calderon*, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954). The Court explained that the purpose of the rule, which stemmed from common law, is to prevent "errors in convictions based upon untrue confessions alone," *Smith*, 348 U.S. at 153, 75 S.Ct. 194 (quoting *Warszower v. United States*, 312 U.S. 342, 347, 61 S.Ct. 603, 85 L.Ed. 876 (1941)), and that the rule is supported by a "long history of judicial experience with confessions and [by] the realization that sound law enforcement requires police investigations which extend beyond the words of the accused," *id.* Confessions, it was thought, may be unreliable because of coercion or inducement and, although involuntary confessions are excluded from the jury, a separate corroboration rule is still necessary. That is because voluntary statements may be unreliable if "extracted from one who is under the pressure of a police investigation—whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past." The court noted empirical evidence of "false confessions voluntarily made." *Smith*, 348 U.S. at 153, 75 S.Ct. 194; *Opper*, 348 U.S. at 88, 75 S.Ct. 158.[2]

▮▮▮ It is in the reasoning of these cases that appellant locates an entitlement to a

jury instruction as to the necessity of corroborating that he had asserted what could be thought a purpose in possessing the gun—to protect against hijacking—which of course suggests that he actually possessed the gun. We begin by dispensing with both appellant's and the government's suggestion that there is a meaningful distinction between requiring a corroboration instruction in all cases and requiring such an instruction in some, or "close," cases.[3] As we read the governing Supreme Court opinions, *no* defendant can be convicted on the basis of an uncorroborated out-of-court statement, whether that statement is used by the prosecution to prove a formal element of the crime charged or a fact subsidiary to proving an element of the crime. *See Smith*, 348 U.S. at 155, 75 S.Ct. 194 ("It is the practical relation of the statement to the Government's case which is crucial, not its theoretical relation to the definition of the offense."). And if the requested jury instruction tracks the corroboration requirement, as appellant contends, an instruction theoretically would be necessary in every case in which the prosecution relies on a defendant's out-of-court statement. We do not see a middle ground.

Implicit in appellant's argument is his contention that, whatever the judge's role in determining the admissibility of such a statement, the jury must ultimately decide whether the statement is corroborated as if corroboration were a separate element of the crime. Although we have decided a number of corroboration cases without confronting this argument, *see, e.g., United States v. Johnson*, 589 F.2d 716, 718–19 (D.C.Cir.1978); *Smoot v. United States*, 312 F.2d 881, 884–85 (D.C.Cir.1962); *Bray v. United States*, 306 F.2d 743, 746 (D.C.Cir.1962), appellant is not

---

**2.** Judge Learned Hand doubted as early as 1918 whether the corroboration rule "has in fact any substantial necessity in justice." *Daeche v. United States*, 250 F. 566, 571 (2d Cir.1918). Suffice it to say that, post-*Miranda*, the need for the rule, especially insofar as it protects against involuntary confessions, is even more questionable. *See, e.g.,* 1 McCormick on Evidence § 145, at 563 & n.49 (4th ed.1992); Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti As a Condition of Admitting An Extrajudicial Confession*, 27 U.S.F. L. Rev. 385, 401–07 (1993) (discussing various rationales for rule and concluding that "[i]n every case, the

rationale proves too much while the ... rule delivers too little"). Of course, doubtful though we are that the Supreme Court would today rule as it did in 1954, we are bound by those decisions.

**3.** In this connection, we reject the government's argument that the standard of review for the latter position is abuse of discretion. We review all alleged failures to submit a jury instruction *de novo, see Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C.Cir.1993), and review for abuse of discretion only when the challenge is to the language of the instruction.

the first to advance it. One of the leading evidence treatises advocates the same position, *see* 7 John Henry Wigmore, Evidence in Trials at Common Law § 2073, at 530–31 (James H. Chadbourn rev.1978) ("The judge's ruling [is] provisional only, preliminary to allowing the case to go to the jury; they in their turn must conclude, *without reference to the judge's ruling*, whether the corroboration exists to satisfy them.") (emphasis in original), and it has been adopted by one of our sister circuits, *see United States v. Marshall*, 863 F.2d 1285, 1288 (6th Cir.1988), a former member of this court in dissent, *see Bowles v. United States*, 439 F.2d 536, 545 n. 8 (D.C.Cir.1970) (Bazelon, C.J., dissenting) (noting that "[c]onsideration of the 'confession' is complicated by the fact that the trial judge failed to instruct the jury" pursuant to the Redbook corroboration instruction), and state supreme courts applying the common law rule which *Opper* and *Smith* adopted and modified, *see, e.g., People v. Reade*, 13 N.Y.2d 42, 241 N.Y.S.2d 829, 191 N.E.2d 891, 893–94 (N.Y.1963).

 We disagree with appellant. We agree generally with the First Circuit, *see United States v. Singleterry*, 29 F.3d 733, 736 (1st Cir.1994), that the jury need not be separately instructed on the issue for it is akin to other admissibility issues, and therefore the trial judge alone decides whether the corroboration test has been met. The corroboration rule is undeniably, in part, a rule governing the admissibility of a defendant's out-of-court statements, *see Opper*, 348 U.S. at 90, 75 S.Ct. 158 (comparing out-of-court statements to hearsay because neither have the "compulsion of the oath nor the test of cross-examination"); *Singleterry*, 29 F.3d at 737; *Smoot*, 312 F.2d at 884. And it is well settled that preliminary facts relating to the admissibility of evidence are questions for the court and not for the jury. *See Lego v. Twomey*, 404 U.S. 477, 489–90, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). There is, moreover, nothing exceptional about a court deciding a question such as corroboration or trustworthiness without the jury, and in other contexts such decisions are routine. *See, e.g., United States v. Laing*, 889 F.2d 281, 287

(D.C.Cir.1989) (cautionary accomplice instruction unnecessary where court first concludes that the accomplice testimony is materially corroborated); FED. R. EVID. 804(b)(3) (confession by non-accused that exculpates the accused is not admissible unless "corroborating circumstances clearly indicate the trustworthiness of the statement"). There is no reason to think that courts are any less equipped to identify the "substantial independent evidence" necessary for corroboration.

To be sure, the corroboration requirement has also been described as a rule governing the sufficiency of the evidence. *See Warszower*, 312 U.S. at 347–48, 61 S.Ct. 603; *Singleterry*, 29 F.3d at 738; *United States v. Bukowski*, 435 F.2d 1094, 1106 n. 7 (7th Cir.1970). Although the *Opper* Court did liken the rule to an admissibility requirement, *see Opper*, 348 U.S at 90, 75 S.Ct. 158, it also noted that the statement—without corroboration—was competent evidence. And in the two companion cases the Court assumed that the statements without corroboration were admissible, *see Smith*, 348 U.S. at 155, 75 S.Ct. 194; *Calderon*, 348 U.S. at 161, 75 S.Ct. 186. The Court's treatment of the issue has caused some confusion, but we think the Court created something of a hybrid rule having elements both of admissibility and sufficiency. Although the statement would normally be admissible under rules of evidence, because of ancient common law concerns, more is required before the trial judge can allow the case to go to the jury. Still, that does not mean that the jury's role is modified.

 We think it telling that in each of the Supreme Court's principal corroboration cases, the Court resolved the corroboration question on its own without any mention at all of the necessity of jury reconsideration. *See Opper*, 348 U.S. at 92–94, 75 S.Ct. 158; *Smith*, 348 U.S. at 150–59, 75 S.Ct. 194; *Calderon*, 348 U.S. at 161–69, 75 S.Ct. 186. The Court treated corroboration essentially as a duty imposed upon courts to ensure that the defendant is not convicted on the basis of an uncorroborated out-of-court-statement.[4] If the Court thought the jury played a neces-

---

4. The court in *Singleterry* did note however that an otherwise admissible out-of-court statement under *Opper* may be inadmissible under FED. R.

EVID. 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See Singleterry*, 29 F.3d at 738–39. We agree

sary supplementary role in making the corroboration determination, the Court certainly could not have affirmed the convictions based solely on its own judgment that sufficient corroborative evidence existed, without first considering whether the jury had been instructed to do the same. In this light, appellant's observation that the Court described the rule as a "restriction on the power of the jury to convict," *Smith*, 348 U.S. at 153, 75 S.Ct. 194, is hardly persuasive. After all, the requirement for sufficient evidence to convict is itself a limitation on the jury's power, but no one thinks it follows from this that the jury must be given an opportunity to reconsider for itself the judge's decision on a motion for judgment of acquittal.

■ Although we think the Court's actual application of the rule in the *Opper* trio is decisive, we note that none of the authorities cited above in support of jury reconsideration attempt to justify that position. We agree with the First Circuit that no persuasive justification exists. *See Singleterry*, 29 F.3d at 738; *see also D'Aquino v. United States*, 192 F.2d 338, 357 (9th Cir.1951); *State v. Weller*, 162 Vt. 79, 644 A.2d 839, 841–42 (Vt.1994); *Watkins v. Commonwealth*, 238 Va. 341, 385 S.E.2d 50, 55 (Va.1989); McCormick § 145, at 564. Indeed, the Supreme Court rejected a similar argument for jury reconsideration even where a constitutional right (the Fifth Amendment right not to be convicted based on an involuntary confession) was at stake, dispensing with the notion that juries are somehow better suited than judges to make the determination. *See Lego*, 404 U.S. at 489–90, 92 S.Ct. 619. It follows *a fortiori* that jury reconsideration is not required where the protection stems from a judicially created evidentiary rule. We think it also fairly obvious that one of the main purposes of the corroboration rule, upon which appellant relies heavily in his brief— protecting the defendant from a jury too credulous to evaluate confessions objectively, *see Smith*, 348 U.S. at 153, 75 S.Ct. 194—is ill-served, indeed disserved, by asking the jury to determine for itself whether a confession is trustworthy enough to consider. *See* Corey J. Ayling, *Comment, Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions*, 1984 Wis. L. Rev. 1121, 1140–41; *Developments in the Law—Confessions*, 79 Harv. L. Rev. 938, 1081–82 (1966).[5]

■ None of this precludes the jury from independently assessing the weight it wishes to attribute to the out-of-court statement. *See Lego*, 404 U.S. at 486, 92 S.Ct. 619 ("[J]uries [are] at liberty to disregard confessions that are insufficiently corroborated or otherwise deemed unworthy of belief."); *Singleterry*, 29 F.3d at 739. The jury's role is not to reconsider the judge's corroboration determination under *Opper*, but rather to determine for itself whether an out-of-court statement, though meeting *Opper*'s requirement, is sufficiently trustworthy to convince the jury, in conjunction with any other evidence, of the defendant's guilt beyond a reasonable doubt. We think that the standard reasonable doubt instruction is adequate to inform the jury of this role. *See id.*; *D'Aquino*, 192 F.2d at 357. In so holding, we follow the Court's cautionary advice that "application [of the rule] should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them." *Smith*, 348 U.S. at 153, 75 S.Ct. 194.[6]

with the First Circuit that the district court may have a "continuing duty to police the jury's consideration of a confession's probative value," a duty that is discharged by the court's own reconsideration of its corroboration decision or through a cautionary instruction to the jury to treat even a corroborated out-of-court statement critically. *Id.* We emphasize, however, that these kinds of supervisory decisions lie within the district court's discretion. *See United States v. Lee*, 506 F.2d 111, 120 (D.C.Cir.1974).

5. The proposed corroboration instruction is quite different, therefore, from the cautionary instruction sometimes required in cases involving accomplice testimony. A defendant can be convicted solely on the basis of an uncorroborated accomplice's testimony. *Lee*, 506 F.2d at 118. We have held that, in certain circumstances, it may be error for a district court to decline to instruct the jury to treat that kind of uncorroborated testimony with caution and to scrutinize it with care. *See id.* Although there is a justifiable worry that without such an instruction the jury will not consider the possibility that the accomplice is trying to secure lenient treatment through his testimony, *see id.* at 119, we do not ask the jury to determine for itself whether it should be allowed to convict based on that testimony.

6. It is true that in the voluntariness context, Congress now requires the district court, after

\* \* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*

concluding that a confession is voluntary, to "permit the jury to hear relevant evidence on the issue of voluntariness and [to] instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501(a) (1994); *Lego,* 404 U.S. at 486 n. 14, 92 S.Ct. 619. And courts have held that it can be reversible error for a district court not to give such an instruction. *See United States v. Bernett,* 495 F.2d 943, 962 (D.C.Cir.1974); *see also United States v. Iwegbu,* 6 F.3d 272, 274 (5th Cir.1993). We think the federal statute mandating an instruction to the jury sufficiently distinguishes this situation from the one at issue in this case. In any event, we note that such an instruction is more akin to a credibility or cautionary instruction than it is to the reconsideration instruction requested by appellant.