UNITED STATES of America,
Plaintiff–Appellee,

v.

Eric C. HOWARD, Defendant–
Appellant.

No. 98–3544.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1999.

Decided June 1, 1999.

Robert N. Trgovich (argued), Tina L. Nommay, Office of the United States Attorney, Fort Wayne, IN, for Plaintiff–Appellee.

Chris K. Starkey (argued), Fort Wayne, IN, for Defendant–Appellant.

Before BAUER, MANION, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

A jury convicted Eric C. Howard of conspiracy to possess with intent to distribute controlled substances, including less than fifty kilograms of marijuana, a Schedule I narcotic. The district court sentenced him to thirty months imprisonment. Howard now appeals both his conviction and his sentence. He claims that his conviction was improper because: (1) the government did not provide substantial independent evidence to corroborate his pre-trial statements; and (2) the district court erred by not instructing the jury to specifically find that the government must provide strong corroborating evidence. He claims that his sentence was improper because the district court: (1) did not lower his base offense level for his acceptance of responsibility; (2) did not downwardly depart from the Guidelines for his voluntary disclosure of the offense; and (3) imposed a sentence based on the wrong

criminal history category. Because all of Howard's arguments lack merit, we affirm his conviction and sentence in every respect.

## I. BACKGROUND

Much of the evidence in this case is uncontroverted and came from statements made by the defendant himself during the investigation and from witnesses called at trial. According to statements made by Howard to federal agents, in mid-February of 1998, he was approached by his friend, Matt Dowdy in Fort Wayne, Indiana. Dowdy wanted to purchase fifty to sixty pounds of marijuana and asked Howard if he could arrange it for him. Howard said that he could and called Matt Frye in Hammond, Indiana to obtain the drugs. Apparently Frye could only supply forty pounds of marijuana, and Howard relayed this information to Dowdy. Dowdy said that forty pounds was fine, and a purchase price of $31,250 was set. Frye made arrangements with one Tim Kaczorowski to act as a courier to transport the marijuana from Hammond to Fort Wayne. Dowdy arranged for the exchange to be made at the Days Inn in North Fort Wayne, and made a reservation there. Howard told Kaczorowski about the meeting place and gave him the reservation number at the Days Inn.

On February 20, 1998, at approximately 11 p.m., Kaczorowski arrived at Howard's place of business, the House of Jazz and Blues, seeking directions to the Days Inn. When Kaczorowski arrived at the Days Inn, the transaction took a disastrous turn. Two unknown assailants approached Kaczorowski, sprayed him with mace, and stole the marijuana. Later that evening, Frye accused Howard of arranging the rip-off at the Days Inn.

The next day, Howard was abducted by a man known only as Matt and a man named Jeff King, apparently in retaliation for the marijuana being stolen. They sought a $38,000 ransom—the price of the drugs plus a $7,000 inconvenience fee.

Howard's captors took him to the basement of King's house in Hammond where they called a man named Jim Zimmerman from a cell phone. Howard told Zimmerman to come up with the money or his kidnapers would kill him. After Zimmerman received this phone call, he contacted the Fort Wayne Police Department about the matter. The Fort Wayne Police subsequently informed the FBI since this was a kidnaping situation. The FBI arrived at Zimmerman's home, and they instructed him to place a call to Howard's captors telling them that he could come up with $12,000 and nine ounces of cocaine for the ransom. Howard's abductors received a phone call that was initially received by the answering machine. The voice on the answering machine said, "Pick it up, this is the most important call you ever want to hear." One of Howard's abductors picked up the phone, and shortly thereafter, the captors drove Howard back to Gary to release him. Officer Jeff Tatum of the Gary Police Department was dispatched to 6404 West 9th Avenue in Gary where Howard was dropped off by his captors.

Howard told the police about the kidnaping. He still had duct tape wrapped around his wrists and the ski mask he was forced to wear. When questioned by federal agents, Howard gave a description of the basement where he had been held. Howard also identified King in a photo line-up presented by the federal agents. Based on this identification, the agents concluded that Howard had been taken to King's residence and they obtained a warrant to search his house. During the search, the agents found that King's basement matched Howard's description of where he claimed to have been held captive. Howard was then charged with the instant offense.

Howard's trial lasted one day. Based on the testimony of the investigating agents, one of Howard's co-workers, employees at the Days Inn, various phone records, and other stipulated facts, the jury found Howard guilty of conspiracy to possess with the

intent to distribute a controlled substance. Howard moved for a judgment of acquittal, which the court denied. The district court sentenced Howard to thirty months imprisonment.

## II. ANALYSIS

### A. Howard's Conviction

Howard presented two arguments in support of his motion for a judgment of acquittal.[1] First, he claimed that the government did not provide sufficient independent evidence to corroborate his pretrial statements. Second, he claimed that the district court erred by failing to provide the jury with the instruction that it must find that there was substantial independent evidence corroborating Howard's statements to support a guilty verdict. We will look at each of these claims in turn in resolving this appeal.

### 1. Sufficiency of Evidence

■■■ Howard faces an uphill battle in arguing that the government did not prove his conviction with sufficient evidence and a judgment of acquittal should have been granted. In reviewing this claim, we look at the evidence in a light most favorable to the government and whether substantial evidence tends to show that the defendant is guilty beyond a reasonable doubt. *United States v. Fearn*, 589 F.2d 1316, 1320–21 (7th Cir.1978). Stated another way, a judgment of acquittal should only be granted if the evidence, looked at in the government's favor, is so scant that the jury could only speculate as to the defendant's guilt, and a reasonably minded jury must have had a reasonable doubt as to the defendant's guilt. *Id.* at 1321 (citing *United States v. Herberman*, 583 F.2d 222, 231 (5th Cir.1978)).

■■■ Of course, the government bears the ultimate burden to prove a criminal defendant guilty beyond a reasonable doubt on all of the elements of the charged offense. The government may rely on statements made by the defendant, but those statements alone will not suffice. *Opper v. United States*, 348 U.S. 84, 90–91, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The government must introduce corroborating evidence as well. *Id.* at 93, 75 S.Ct. 158. This corroborating evidence, standing alone, need not be sufficient to establish the defendant's guilt. *Id.* The only requirement is that the independent evidence be substantial enough to establish the trustworthiness of the defendant's statements. *United States v. Jackson*, 103 F.3d 561, 567 (7th Cir.1996). "All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." *Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954) (citation omitted).

■■■ The offense in question here is conspiracy to possess with intent to distribute a controlled substance, specifically marijuana. To establish the crime of conspiracy to violate a federal narcotics law, the government must show that: (1) there was an agreement between two or more people to commit the crime; (2) the defendant was a party to the agreement; and (3) one of the coconspirators committed an overt act in furtherance of the conspiracy. *United States v. Anderson*, 896 F.2d 1076, 1078 (7th Cir.1990). The government may use circumstantial evidence to prove a defendant's involvement in a conspiracy. *Id.* at 1079. The government does not have to show that the goal of the conspiracy was accomplished. *See United States v. Auerbach*, 913 F.2d 407, 416 (7th Cir.1990) (noting that a jury instruction stating that a "conspiracy may be established even if its purpose was not accomplished" was correct). Thus, for the conviction to stand,

---

1. Howard originally had raised an ineffective assistance of counsel claim in addition to the claims presented here. However, he has since withdrawn this claim.

the government had to show Howard's voluntary agreement to participate in the selling of marijuana.

The crux of Howard's argument is that the government did not present substantial independent evidence to corroborate the statements he made to the investigating officers, primarily because there never was any actual drug deal, nor was there any marijuana recovered. At trial, however, the government elicited testimony from the investigating agents that described, in detail, Howard's own description of the circumstances surrounding the drug deal and the kidnaping. The government also provided substantial evidence tending to support Howard's story in the form of: (1) cellular phone records showing that a call was placed from the cell phone used by Howard's captors to Zimmerman on the night of the kidnaping; (2) the fact that King's basement matched Howard's description of the place where he was held during the kidnaping; (3) duct tape found in the basement that matched the duct tape wrapped around Howard's wrists when he first contacted authorities about the kidnaping; (4) evidence in the form of hotel records that Dowdy reserved a room at the Days Inn on the night of the kidnaping; (5) long distance phone records showing phone calls between Howard and Frye; and (6) testimony from one of Howard's co-workers who was present the night Howard was abducted and who subsequently had a conversation with Howard about the botched deal where Howard admitted to being involved in marijuana dealing. None of these facts are disputed.

Given the abundance of evidence that corroborates Howard's story, this is not a case where the evidence is so scant that a jury must have had a reasonable doubt as to Howard's guilt. Howard argues that the corroborating evidence presented by the government is not sufficient to convict him because there is nothing illegal about making long distance phone calls or hotel reservations. While this may be true, when looked at as a whole, all of the evidence corroborates Howard's story that

a drug deal was arranged and, for some reason or another, went awry. A reasonable jury could have found beyond a reasonable doubt, and indeed did find, that: (1) there was an agreement to sell marijuana; (2) Howard knew of and was a party to that agreement; and (3) an overt act was taken by a coconspirator in furtherance of that agreement. There was sufficient corroborating evidence for the jury to return a guilty verdict.

**2. Jury Instructions**

■ The second ground on which Howard contests his conviction is that the district court had an obligation to instruct the jury that, in order to convict him, it must specifically find that there was substantial independent evidence aside from his extrajudicial statements to corroborate his confession. Although we have not ruled on this particular issue before, other circuits have. *See United States v. Dickerson*, 163 F.3d 639 (D.C.Cir.1999); *United States v. Singleterry*, 29 F.3d 733 (1st Cir.1994), *cert. denied*, 513 U.S. 1048, 115 S.Ct. 647, 130 L.Ed.2d 552 (1994); *United States v. Marshall*, 863 F.2d 1285 (6th Cir.1988). We agree with the circuits that have held that a district court is not obligated to instruct the jury to make a specific finding as to whether the government presented substantial independent evidence to corroborate the defendant's confession.

The D.C. Circuit stated in *Dickerson* that the issue of corroboration, like many other admissibility issues, is better decided by the judge and not the jury. *Dickerson*, 163 F.3d at 642. It did not find anything exceptional about the corroboration requirement as opposed to any other evidentiary ruling ordinarily made by a judge. *Id.* In finding that a specific corroboration instruction is not needed, the court followed the First Circuit's position set forth in *Singleterry*, which stated that in federal court, the trial judge has no responsibility to instruct the jury to determine whether a confession is trustworthy after the court itself has tested the sufficiency of the evidence to support a conviction. *Singleterry*, 29 F.3d at 738.

On one occasion, the Sixth Circuit held otherwise. In *Marshall,* the court said that it was erroneous for the district court not to instruct the jury that corroboration of the defendant's statements was necessary. *Marshall,* 863 F.2d at 1288. However, that case is distinguishable from the case at hand; in *Marshall,* there was *no* corroborating evidence to bolster the defendant's statements. *Id.* at 1287–88. For practical purposes, the defendant in *Marshall* was entitled to a directed verdict.

That is not the case here. As stated above, there was ample corroborating evidence to show the existence of a conspiracy to possess with intent to distribute marijuana. Furthermore, Howard does not now, nor did he ever, claim that his statements were false. The district judge made a finding that there was substantial independent evidence to bolster the truthfulness of Howard's confession. The instructions Howard tendered to the district court did not conform to the Seventh Circuit Pattern Jury Instructions or the law of the Circuit. As in *Dickerson* and *Singleterry,* the judge's instructions regarding the government's burden of proof and the fact that the defendant is presumed innocent until proven guilty were adequate. Howard's conviction is affirmed.

## B. Howard's Sentence

Howard challenges his sentence on three grounds. First, Howard argues that the district court erred in not downwardly departing from the Sentencing Guidelines because he accepted responsibility for the offense. Second, Howard argues that the court erred in not departing downward for his voluntary disclosure of the offense. Third, Howard contends that the district court improperly placed him in criminal history category III by including points based on a parole violation after this offense was committed, but prior to sentencing.

### 1. Acceptance of Responsibility

Under § 3E1.1 of the United States Sentencing Guidelines, a defendant may qualify for a two level reduction of his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. A district court's decision whether to grant this reduction is a factual one that is reviewed for clear error. *United States v. Cunningham,* 103 F.3d 596, 597–98 (7th Cir.1996). A defendant must clearly demonstrate that he is entitled to this reduction by a preponderance of the evidence. *Id.* at 598. The district court's finding as to whether the defendant demonstrated that he has accepted responsibility for his offense is entitled to "great deference on review." U.S.S.G. § 3E1.1, Application Note 5.

Ordinarily, the acceptance of responsibility reduction is applied to a defendant who has pled guilty to the offense. However, conviction by means of a trial does not automatically preclude a defendant from this reduction. U.S.S.G. § 3E1.1, Application Note 2. There are "rare situations" where a defendant may be eligible for this reduction even though he exercises his constitutional right to a trial, however it will only apply where the defendant does not put the government to its burden of proof by denying the essential factual elements of guilt. *Id.* The Application Notes suggest that such a "rare" case might be a constitutional challenge to a particular statute or a charge that a statute does not apply to the defendant's conduct. *Id.*

The district court found, and we agree, that the "rare circumstances" anticipated by the Guidelines where a defendant exercised his right to a trial and yet may be granted a reduction for acceptance of responsibility are not present in this case. Howard's defense at trial was that no conspiracy to possess with intent to distribute marijuana ever existed. He argued that there was no agreement, and he argued that there were no drugs. At trial, the government had to prove all of the factual elements that the conspiracy did, indeed, exist. Since the government was put to this burden, the district court was correct

in not granting Howard the acceptance of responsibility reduction.

### 2. Voluntary Disclosure of the Offense

In addition, Howard argues that if we find that he is entitled to a downward departure for acceptance of responsibility, he is also entitled to a downward departure for voluntary disclosure of the offense. A defendant may be entitled to a downward departure from the Sentencing Guidelines if he "voluntarily discloses to authorities the existence of, *and accepts responsibility for,* the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise." U.S.S.G.§ 5K2.16 (emphasis added). As Howard concedes in his brief, if we find that he is not eligible for the acceptance of responsibility reduction, he is automatically ineligible for departure based on disclosure of the offense. Thus, again, the district court was correct in not granting Howard a downward departure for voluntary disclosure of the offense.

### 3. Criminal History Calculation

 Finally, Howard argues that the district court incorrectly sentenced him because it placed him in criminal history category III. More specifically, he claims that the district court should not have added a point to his criminal history score for a violation of his parole that occurred after the commission of the instant offense but before sentencing. Without that extra point, Howard would have been placed in criminal history category II. Unfortunately for Howard, the difference in this case is of no consequence.

In *United States v. Dillon*, 905 F.2d 1034 (7th Cir.1990), we decided that where two Guidelines ranges overlap and the sentence imposed would have been the same regardless of which range was applied, the technical dispute over which range to apply may be left unresolved. *Id.* at 1037. As long as it is reasonable to conclude that the same sentence would have been imposed regardless of the out-

come of the dispute over which range to apply, we need not resolve the dispute. *Id.* at 1038. The Second Circuit first decided in *United States v. Bermingham*, 855 F.2d 925 (2nd Cir.1988), that this was true with respect to disputes over a defendant's offense level, and we extended it to include disputes over criminal history categories as well. *Dillon*, 905 F.2d at 1037.

Here, not only is it reasonable to conclude that the sentence would have been the same, but the sentencing judge specifically said at the sentencing hearing that he would have sentenced Howard to thirty months imprisonment regardless of which criminal history category he applied. In criminal history category II, Howard would have been subject to 24 to 30 months imprisonment. At sentencing, the judge said, "I would have sentenced him to the high end of the earlier guideline range, but since I have the discretion to sentence him between 27 and 33 months ... I'm going to sentence him to 30 months ... In effect, you're not being penalized for this odd circumstance of the revocation occurring after the trial in this case, and in fact, after the original sentencing hearing in this case." Sentencing Hearing Tr. pp. 24–25. While applying the wrong sentencing range may, in some cases, constitute plain error, *see United States v. Spears*, 159 F.3d 1081, 1088 (7th Cir.1998), based on the district court's statements, it is clear that remand in this case is unnecessary to resolve the criminal history category dispute. Even if there were error, it was harmless and did not affect the district court's selection of the sentence imposed. *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

### III. CONCLUSION

For the reasons set forth above, we A<small>FFIRM</small> both Howard's conviction and sentence.