**Marc S. FOWLER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 08–CF–933.**

District of Columbia Court of Appeals.

Submitted Sept. 22, 2011.
Decided Nov. 10, 2011.

James Klein and Christopher Kemmit, Public Defender Service, were on the brief, for appellant.

Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Amanda Haines, and Sarah Chasson, Assistant United States Attorneys, were on the brief, for appellee.

Before OBERLY, Associate Judge, RUIZ, Associate Judge, Retired, and KING, Senior Judge.

OBERLY, Associate Judge:

Appellant Marc Fowler was convicted after a jury trial of first-degree murder while armed, assault with intent to kill while armed, and five other offenses arising out of two separate shootings.[1] On appeal Fowler argues that the trial court erred by refusing to instruct the jury that he could not be convicted based solely on his out-of-court confessions. We hold that Fowler's argument has no merit and affirm his convictions.

## I. Facts and Procedural Background

Allen Price was shot in the head on August 10, 2002, outside of a wholesale store located at 1271 4th Street in Northeast Washington, D.C. He survived, but was shot again on January 31, 2003, this time fatally. The January shooting occurred at a gas station located at 6th Street and Florida Avenue, also in Northeast Washington, D.C. Fowler was arrested for both shootings in November 2006.

The evidence at Fowler's trial showed that Fowler and Price were both "vendors" who purchased wholesale merchandise and sold it on the street, and that they were "good friends," but that the relationship was "off and on" and they fought on multiple occasions.[2] Haney Eshkar, who worked at the wholesale store near the location of the August shooting, testified that just before the shooting he walked out of the store and saw Fowler crouched out-

side, and that Fowler gestured for Eshkar to go back inside. Eshkar heard gunshots one or two minutes later. Price then entered the store and told Eshkar that he had been shot. Eshkar also testified that two or three days after the shooting Fowler confessed that he "shot Allen because [Allen] was messing with his family." Jose Teceros testified that he was sitting in a car outside a nearby shop when he heard the gunshots. Less than a minute later Teceros saw a man run past the front of his vehicle while tucking a gun into his waistband. Teceros also testified that the "wounded person" was sitting in a vehicle when he was shot.

A longtime friend of Fowler's, Marvin Hazzard, testified that a few days after the August shooting, Fowler confessed that he shot Price: "[F]rom what [Fowler] told me, . . . [Price was] sitting in his . . . truck with his window half down . . . [a]nd [Fowler] ran up and went bop bop bop." Fowler told Hazzard that he used his wife's gun in the shooting and that he later threw it in a river. Hazzard's testimony matched Eshkar's in that according to Hazzard, Fowler told him that "one of the store employee's sons was outside and before the shooting [Fowler] beckoned for him to go inside." Fowler's wife, Loretta Renee Crowder, testified that she had purchased a gun in June 2002, and that only she and Fowler knew where she kept it. Ballistics evidence linked three cartridge casings found in Price's car after the shooting to the gun registered to Crowder. Fowler's girlfriend, Tralesha Faison, testified that Fowler told her that he shot

---

1. Specifically, Fowler was convicted of first-degree murder while armed, a violation of D.C.Code §§ 22–2101, –4502 (2001); assault with intent to kill while armed, a violation of §§ 22–401, –4502; two counts of possession of a firearm during a crime of violence, a violation of § 22–4504(b); two counts of carrying a pistol without a license, a violation of

§ 22–4504(a); and obstructing justice, a violation of § 22–722(a)(6).

2. There was testimony indicating Fowler had suspected that Price was somehow involved in the kidnapping and robbery of his estranged wife, Loretta Renee Crowder.

Price but that Price did not die because he had a steel plate in his head.

Fowler's friend Hazzard testified that Fowler also confessed to Price's January 2003 murder: According to Hazzard, Fowler said that he was driving on Florida Avenue with Hazzard's son, Marvin Jr., when Fowler "jumped out and told [Marvin Jr.] to drive the car around 6th Street" and then "ran over [to the gas station on 6th and Florida] . . . [and] did what he had to do [and] went bop bop bop." Faison testified that Fowler told her that he killed Price, and at trial the government played a recording of a 911 call Faison made in which she told the operator that "[Fowler] and [Price] were fighting" and that "when [Fowler] found out that [Price] wanted to get him, he killed [Price] first." Robert Rifkin testified that he heard the gunshots while he was waiting to pump gas and less than a minute later saw a man in his midthirties running "down 6th Street from the direction of Florida Avenue" in an "unusual" manner, "holding his right arm down against his side."

■ Before the trial court instructed the jury, Fowler's counsel requested that the court provide the jury with an instruction stating:

> A defendant cannot be convicted solely on his/her own statements concerning elements of the offense that s/he made out of court. Therefore, you must not consider the statements allegedly made by the defendant unless you find that there is substantial independent evidence that tends to establish the reliability of these statements. This supporting evidence may be direct or circumstantial or both. You must find the defendant not guilty, unless the independent evidence and the defendant's statements,

taken as a whole, establish each of the elements of the offense beyond a reasonable doubt.

Criminal Jury Instructions for the District of Columbia, No. 2.306 (5th ed. rev. 2010).[3] The trial court declined to provide the instruction, explaining that "the instruction itself is, at worst, inaccurate and, at best, misleading [and] it probably should be deleted from the [Red Book]. . . . At a minimum, it appears . . . to confuse or conflate the questions of admissibility of statements if they're not corroborated with the question of sufficiency of evidence. . . . [P]rimarily . . . the principle is a person can't be convicted solely on a completely uncorroborated admission. . . . And that's . . . [an] issue which the [c]ourt does have to decide, and I have decided that in this case against the defense." The court went on to explain that "[i]f there were insufficient corroboration of Mr. Fowler's statements . . . then they would not be admissible and I would so rule. Once they are admissible, the jury decides whether he made them or not and what weight to give them." The jury returned guilty verdicts on all counts.

## II. Discussion

■ "It is a well-established rule that 'a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused.'" *Adams v. United States,* 502 A.2d 1011, 1022 (D.C.1986) (quoting *Wong Sun v. United States,* 371 U.S. 471, 488–89, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). This is because "doubt persists that the zeal of the agencies of prosecution to protect the peace, the self-interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion

---

**3.** The Criminal Jury Instructions were renumbered after Fowler's trial. There is no substantive difference between 2.49 (the instruction Fowler requested) and 2.306 (the current instruction).

may tinge or warp the facts of the confession." *Opper v. United States,* 348 U.S. 84, 89–90, 75 S.Ct. 158, 99 L.Ed. 101 (1954). " 'As to the quantum of corroboration that must accompany the admission in order to provide an adequate basis for conviction, . . . [it] need not be sufficient, independent of the statements, to establish the corpus delicti,' " *Adams,* 502 A.2d at 1022 (quoting *Harrison v. United States,* 281 A.2d 222, 224–25 (D.C.1971)), but the government must "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Adams,* 502 A.2d at 1022–23 (quotation marks omitted).

The trial judge held that whether Fowler's confessions were adequately corroborated was his determination to make when evaluating their admissibility. Fowler argues that the corroboration question is instead to be decided by the jury, and that the trial court "conflate[d] the question of admissibility with that of sufficiency, and thereby reassign[ed] a quintessential function of the fact-finder to the exclusive domain of the trial court."

Fowler's attempt to separate the questions of admissibility and sufficiency of corroborating evidence into two distinct inquiries (one for the court and one for the jury) fails because, in reality, the two are necessarily intertwined. That is to say, the analysis of whether a confession is admissible requires, at least in part, an evaluation of whether it is supported by sufficient evidence: "Traditionally, the . . . court makes a preliminary [admissibility] determination as to whether testimony about the confession is sufficiently trustworthy for the jury to consider the confession as evidence of guilt." *United States v. Singleterry,* 29 F.3d 733, 737 (1st Cir. 1994). "In this respect, the . . . rule essentially functions [to regulate] the admission of statements which 'are much like hearsay, [having had] neither the compulsion of the oath nor the test of cross-examination.' " *Id.* (second alteration in original) (quoting *Opper,* 348 U.S. at 90, 75 S.Ct. 158). But this admissibility analysis by the trial court necessarily involves consideration of whether the confession has been sufficiently corroborated, and "courts often characterize corroboration requirements as governing the *sufficiency* of the evidence." *Singleterry,* 29 F.3d at 738.

The majority of jurisdictions that have considered this issue have rejected Fowler's argument that the sufficiency of corroboration evidence is a question for the jury. *See, e.g., United States v. Howard,* 179 F.3d 539, 543 (7th Cir.1999); *United States v. Dickerson,* 163 F.3d 639, 642–43 (D.C.Cir.1999); *Singleterry,* 29 F.3d at 738–39; *Riggins v. State,* 155 Md.App. 181, 843 A.2d 115, 139–42 (Md.2004); *State v. Weller,* 162 Vt. 79, 644 A.2d 839, 841–42 (1994); *Watkins v. Commonwealth,* 238 Va. 341, 385 S.E.2d 50, 54–56 (1989); *People v. Rosario,* 166 Ill.App.3d 383, 116 Ill.Dec. 805, 519 N.E.2d 1020, 1028–29 (1988). These courts have instead held that the corroboration analysis is to be addressed by the trial court at the admissibility stage.[4] In *Dickerson,* the case relied

---

4. Some courts, however, have held that the adequacy of corroboration is a sufficiency question for the jury. In *United States v. Marshall,* for example, the Sixth Circuit held that "[because] the jury was never advised that corroboration was necessary," the defendant's conviction may have been "on the basis of the uncorroborated statement alone." 863 F.2d 1285, 1287–88 (6th Cir.1988) (reversing and remanding for a new trial); *see also People v. Reade,* 13 N.Y.2d 42, 241 N.Y.S.2d 829, 191 N.E.2d 891, 893–94 (1963). *Marshall* is distinguishable because in that case there was uncertainty about whether a crime had even

upon by the trial court, the Court of Appeals for the D.C. Circuit rejected the appellant's "contention that, whatever the judge's role in determining the admissibility of such a statement, the jury must ultimately decide whether the statement is corroborated" and held instead that the "jury need not be separately instructed on the issue for it is akin to other admissibility issues, and therefore the trial judge alone decides whether the corroboration test has been met." 163 F.3d at 641, 642. As the D.C. Circuit explained, the "corroboration rule is undeniably, in part, a rule governing the admissibility of a defendant's out-of-court statements, ... [a]nd it is well settled that preliminary facts relating to the admissibility of evidence are questions for the court and not the jury." *Id.* at 642 (citations omitted). *Dickerson* relied on *Singleterry*, in which the Court of Appeals for the First Circuit rejected the appellant's argument that "even after a court has properly admitted evidence of a confession ..., the court has a responsibility, either generally or in certain cases, to instruct the jury to determine that the confession is trustworthy before considering it as evidence of guilt." *Singleterry*, 29 F.3d at 738. The First Circuit held that it was sufficient that the trial court "correctly found that the confession was trustworthy, and properly instructed the jury on the government's burden of proof." *Id.* at 739.

■ We agree with the majority of jurisdictions that there is "nothing exceptional about a court deciding a question such as corroboration or trustworthiness without the jury," *Dickerson*, 163 F.3d at 642, and that a trial court "is not obligated to instruct the jury to make a specific finding as to whether the government presented substantial independent evidence to corroborate the defendant's confession." *Howard*, 179 F.3d at 543 (the issue "is better decided by the judge and not the jury," because there is nothing "exceptional about the corroboration requirement as opposed to any other evidentiary ruling ordinarily made by a judge" (citing *Dickerson*, 163 F.3d at 642)); *see also Weller*, 644 A.2d at 842 ("The trial court['s] ... consideration of this issue will adequately insure that the reason for the rule [requiring corroboration] is satisfied before the jury is ever allowed to consider the admissions."). After a trial court rules, "as a threshold matter of law, that [a] confession[ ] [is] sufficiently corroborated," *Watkins*, 385 S.E.2d at 55, it would be nonsensical to "submit that legal ruling for redetermination by the jury." *Id.*

The argument pressed by Fowler would have empowered the jury to overrule the trial court's decision that his confessions were independently corroborated, and we are unwilling to adopt such a rule. *See id.* Whether the jury instruction should be used in its present form going forward is a question we save for another day, because the trial court in this case appropriately declined to give it. However, we appreciate the trial court's frustration with the instruction. It seems a rare case, if any,

---

occurred, scant evidence to corroborate the appellant's out-of-court statement, 863 F.2d at 1287–88, and "[f]or practical purposes, the defendant in *Marshall* was entitled to a directed verdict." *United States v. Howard*, 179 F.3d 539, 544 (7th Cir.1999). We are also unpersuaded by *Reade*, where the court reversed based on a finding that the "items of additional proof" were insufficient, "apart from the defendant's confession," to "make

out a prima facie case of guilt." 241 N.Y.S.2d 829, 191 N.E.2d at 894. That is not our standard—this court does not require the evidence corroborating a defendant's confession to "be sufficient, independent of the [confession], to establish the corpus delicti," *Adams*, 502 A.2d at 1022 (quotation marks omitted), but instead holds that it must establish the statement's trustworthiness. *See id.* at 1022–23.

where the instruction would be appropriate, and we recommend that the Criminal Jury Instructions Committee consider whether there is a need for it or whether it should be revised to avoid the suggestion that the jury might decline to consider (as opposed to discredit) a confession that has been properly admitted.

In the present case there was no abuse of discretion in the trial court's decision not to provide the jury instruction,[5] which says, in part, "you must not consider the statements allegedly made by the defendant unless you find that there is substantial independent evidence that tends to establish the reliability of these statements." The trial court correctly ruled that Fowler's statements were, "in fact, corroborated" and that "if there were to be a conviction in this case, it would not and could not be based solely on the statements of the defendant, but on all the direct and circumstantial evidence presented which is sufficient to go to the jury." Testimony from Eshkar, Hazzard, Teceros, Crowder, Rifkin, and Faison corroborated the details in Fowler's out-of-court confessions,[6] and the ballistics evidence confirmed Fowler's statement to Hazzard that he had used his wife's gun in the August shooting. Moreover, Fowler was "protected by [the] customary jury instructions. The jury [was] charged with determining whether the [government] proved the elements of the crime beyond a reasonable doubt. To that end, the jury [was] free 'to consider the admissions in connection with all the other evidence in the case and to decide whether [Fowler's guilt was] established beyond a reasonable doubt.'" *Weller*, 644 A.2d at 842 (quoting *Opper*, 348 U.S. at 94, 75 S.Ct. 158).[7]

### III. Conclusion

Because the trial court did not abuse its discretion in refusing to provide Fowler's requested instruction, we affirm the judgment of conviction.

*Affirmed.*

---

5. *See Edwards v. United States*, 721 A.2d 938, 944 (D.C.1998) (finding no abuse of discretion in the trial court's rejection of appellant's requested jury instruction).

6. We are not unmindful of the extent to which witnesses Eshkar, Hazzard, and Faison were heavily impeached. For example, Eshkar delayed informing the police of Fowler's confession for five years and then, apparently, did so only in response to police questioning that Fowler says was "leading." Hazzard did not report the confession to the police until three to four years after Fowler allegedly confessed to him about the first and second shootings and did so only when he was pending sentencing in a federal prosecution. Faison also did not report the confession until several years after the shooting and did so only after she had an argument with Fowler and, according to her own testimony, may have been delusional. These three witnesses were not the only source of corroborating evidence, however, and, more importantly, the extent to which their impeachment undermined the weight to be given their testimony was for the jury to decide once the trial court had made the determination of admissibility. Importantly, the jury was specifically instructed that Hazzard testified pursuant to a cooperation agreement by which he stood to benefit at the sentencing stage of his own proceeding, and the jury was further instructed that it was "the sole judge[] of the credibility of the witnesses. In other words, [the jury] alone determine[s] whether to believe a witness and the extent to which any witness should be believed."

7. *See also* Jury Instructions quoted in n. 6, *supra*.