**STATE of Utah, Plaintiff and Respondent,**

v.

**Sandra J. TALBOT, Defendant and Appellant.**

**No. 18340.**

Supreme Court of Utah.

May 24, 1983.

Gary H. Weight, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert Parrish, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant was convicted by a jury of manslaughter[1] by recklessly causing the death of her 17-month-old illegitimate son. The thrust of her appeal is that the prosecution did not prove a "corpus delicti," and that the trial court erred in admitting defendant's voluntary statement after she had waived her *Miranda* rights. Defendant contends that in Utah "a statement of an accused cannot be used to establish the corpus delicti" unless "the state independently establishes the corpus delicti of the offense charged." In support, she cites *State v. Cooley*,[2] which in turn cites *State v. Ferry*.[3] In the latter case, we held that before introducing an accused's statement, "there must be independent clear and convincing evidence of the corpus delicti, although we and the authorities generally do not require it to be convincing beyond a reasonable doubt." On the facts of this case, we believe the statement was admissible.

At age 4 months, the deceased child had been hospitalized for growth and weight deficiency, suggesting inadequate care. Thereafter, the child was returned to defendant, but was again taken from her and placed in a foster home, where he remained for a year. He was then returned to the defendant, who had married and had borne another child. This incident arose about three months later, after the child had what the parties have termed "temper tantrums." About 3 hours after being put to bed for misbehavior, the child was placed on a chair and given a piece of toast. In a temper tantrum that followed, defendant slapped the child, and his "head hit pretty hard on the table." She said she was remorseful, and became alarmed. While changing stations on the television set in an adjoining room, defendant heard the child choking and saw him fall off the chair. She picked him up and ran to a neighbor's home. There, transportation was arranged to take the child to the hospital.

The child suffered from a breathing problem and a rapid heart condition. Food particles were removed from his throat and medication was provided, to no avail. The child died two days later. Four of the doctors who examined the child did not rule out child abuse as the cause of death, but neither could any of them medically rule out the possibility of accidental death. An examination of the child did show without dispute that the child had scattered bruises on the head, temple, back, penis and buttocks. Some of the bruises were shown to have been made at times previous to the choking incident, as evidenced by the de-

---

1. In violation of U.C.A., 1953, § 76–5–205, a second degree felony.

2. Utah, 603 P.2d 800 (1979).

3. 2 Utah 2d 371, 275 P.2d 173 (1954).

gree of discoloration and intensity. An autopsy was performed, which revealed that the primary cause of death was a very large bruise over the left top of the head, which caused bilateral subdural hematoma and severe brain swelling. The doctor performing the autopsy ruled out accident as the cause of death because of the number of injuries present. He attributed the death to so-called "battered child syndrome."

The defendant's written statement was given voluntarily, with waiver of rights, to a police officer at the police station. She also talked freely with the officer, telling him of troubles with her husband, who was not the child's biological father, the financial difficulties with her family, her lack of friends in the area, and that during the past three weeks she had repeatedly hit the child, often "harder than I really expected to." Noticing bruises on the child's back, her husband had told her not to discipline the child. At the trial, defendant said her husband had also beat the child.

 The basis upon which defendant predicates error is her contention that her statement cannot be employed to establish the corpus delicti. She reasons that since her statement is inadmissible, a corpus delicti was impossible to prove in this case. The ready answer is that, even without defendant's statement, the independent evidence was sufficient to go to the jury on the question of manslaughter. This is reflected in the facts pertaining to neglect, abuse, environment, repeated beating, and the testimony of the defendant herself, to which no one objected.

 The undisputed, admissible and unobjected-to evidence justifies the verdict of guilt beyond a reasonable doubt under the following principles:

> To establish guilt, it is generally necessary for the prosecution to show that (a) the injury or harm specified in the crime occurred, (b) this injury or harm was caused by someone's criminal activity, and (c) the defendant was the guilty party. To sustain a conviction, the require-

ment of independent proof of the corpus delicti demands only that the prosecution have introduced independent evidence tending to show (a) and (b). It is not necessary that the independent proof tend to connect the defendant with the crime.[4] [Citations omitted.]

The conviction and sentence are affirmed.

---

4. McCormick, Handbook of Evidence (E. Cleary, 2d ed., 1972), at p. 347.