2003 UT 10

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Brent MAUCHLEY, Defendant and Respondent.**

**No. 20010551.**

Supreme Court of Utah.

April 1, 2003.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Kent R. Hart, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶1 This appeal concerns the corpus delicti rule. Specifically, we consider whether the corpus delicti rule should be replaced by the trustworthiness standard that has been adopted by a growing number of jurisdictions. The corpus delicti rule prohibits convicting a person based upon his or her confession alone. Stated differently, if there is no independent evidence that a crime occurred, apart from the confession, a person cannot be convicted, even if the confession was trustworthy.

¶2 In this case, the defendant, Brent Mauchley, filed a motion to dismiss charges against him for insurance fraud and theft by deception because, absent his confession, there was no independent evidence that either crime actually occurred. The district court denied Mauchley's motion. He then

pleaded guilty to attempted insurance fraud, but reserved his right to appeal the denial of his motion. On appeal, the court of appeals reversed the district court's denial of Mauchley's motion to dismiss because the State conceded there was insufficient evidence to convict him under the corpus delicti rule. *State v. Mauchley*, 2001 UT App 177, ¶¶ 1, 3, 2001 WL 587156.

¶ 3 Despite its concession, the State argues that we should reverse the court of appeals' decision because (1) the corpus delicti rule is anachronistic, (2) the rule should be abandoned in favor of the trustworthiness standard, and (3) under the trustworthiness standard, sufficient evidence exists to affirm the denial of Mauchley's motion to dismiss. We agree that the corpus delicti rule is anachronistic and we adopt the trustworthiness standard in its stead. We nevertheless affirm the court of appeals' decision because the Ex Post Facto Clause of the United States Constitution prevents application of the trustworthiness standard to this case.

## BACKGROUND

¶ 4 Brent Mauchley filed an insurance claim against Salt Lake City for injuries he allegedly sustained from falling into an uncovered manhole. He claimed he fell into the manhole the evening of January 5, 1995. That same evening, he checked himself into a nearby emergency room and received treatment for his purported injuries. After seeing that the manhole was indeed uncovered, one of the hospital's security officers barricaded the opening until the problem could be remedied.

¶ 5 Salt Lake City's insurance company conducted an independent investigation of the incident. During the investigation "[t]here was never any question that [Mauchley] had fallen in the hole." Instead, the focus of the investigation was on "who was at fault for the open manhole" and the measure of damages that Mauchley should recover for his purported injuries. The insurance company settled with him on August 17, 1998.

¶ 6 Approximately six months after the settlement, Mauchley went to the South Salt Lake Police Department and voluntarily confessed that he had fabricated the story about falling into the manhole and sustaining injuries from the fall. He admitted he fabricated the story after seeing the uncovered manhole. Prior to his confession, there was no suspicion that his story was false, nor was there any evidence that a crime had been committed.

¶ 7 As a result of his confession, Mauchley was charged with two second degree felonies: insurance fraud and theft by deception. He filed a motion to dismiss the charges, arguing that the corpus delicti rule prohibited the State from using his confession to convict him because there was no independent evidence of the crime.

¶ 8 On March 23, 2000, the district court held a hearing on Mauchley's motion to dismiss. At the hearing, the court found there was sufficient evidence to satisfy the corpus delicti rule because Mauchley had filed a false insurance claim and received a settlement based on that claim. The court concluded that the claim and settlement constituted independent evidence of the crime. Moreover, it found that his "confession corroborate[d] the evidence of a false insurance claim." Therefore, the district court denied defendant's motion to dismiss. Mauchley then pleaded guilty to attempted insurance fraud, a third degree felony, but reserved his right to appeal the denial of his motion to dismiss.

¶ 9 Before the court of appeals, the State conceded that "the stipulated facts did not reflect the existence of inculpatory evidence independent of [Mauchley's] confession," *Mauchley*, 2001 UT App 177 at ¶ 1, because merely filing an insurance claim and receiving a settlement do not constitute criminal acts. Since "a confession alone cannot support a conviction" under the corpus delicti rule, the court of appeals ruled that the district court erred in denying the motion to dismiss. *Id.* at ¶¶ 1, 3.

¶ 10 We granted the State's petition for a writ of certiorari. We have jurisdiction to review the court of appeals' decision pursuant to Utah Code Ann. § 78-2-2(3)(a) (2002).

## ANALYSIS

### I. STARE DECISIS

¶ 11 The State is asking this court to abandon the corpus delicti rule and to replace it with the trustworthiness standard that has been adopted by a growing number of jurisdictions. "Those asking us to overturn prior precedent have a substantial burden of persuasion" due to "the doctrine of stare decisis." *State v. Menzies,* 889 P.2d 393, 398 (Utah 1994) (citation omitted). The doctrine of stare decisis is crucial to our system of justice because it ensures " 'predictability of the law and the fairness of adjudication.' " *Id.* at 399 (quoting *State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993)). However, when we are " 'clearly convinced that [a] rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent,' " we are " 'not inexorably bound by [our] own precedents.' " *Id.* (quoting John Hanna, *The Role of Precedent in Judicial Decision,* 2 Vill. L.Rev. 367, 367 (1957)). We therefore turn now to a discussion of the rule's origin and its applicability to determine if it was originally erroneous.

### II. HISTORICAL DEVELOPMENT OF THE CORROBORATION RULE

*A. Development of the Corroboration Rule in England and the United States*

¶ 12 Courts adhere almost universally to the principle that "an extrajudicial confession,[1] by itself, is not sufficient to sustain a conviction of a crime." *State v. Weldon,* 6 Utah 2d 372, 373, 314 P.2d 353, 354 (1957) (citing R.T.K., Annotation, *Corroboration of Confession,* 127 A.L.R. 1130 (1940); E.H. Schopler, Annotation, *Corroboration of Extrajudicial Confession or Admission,* 45 A.L.R.2d 1316 (1956)). Thus, a confession may not be admitted unless there is other corroborative evidence of the crime. *See id.* The purpose of this corroboration rule is to

prevent innocent persons from being convicted when they falsely confess to committing " 'a crime that was never committed or was committed by someone else.' " *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487, 491 (1985) (quoting *State v. Franklin,* 308 N.C. 682, 304 S.E.2d 579, 586 (1983)); *see also State v. Johnson,* 821 P.2d 1150, 1162 (Utah 1991) (describing the corpus delicti rule "as a 'safeguard against convicting the innocent on the strength of false confessions' ") (quoting *Weldon,* 6 Utah 2d at 373, 314 P.2d at 354).

¶ 13 Although the exact origin of the corpus delicti rule is unknown, many historians attribute the rule's development to a seventeenth century case, wherein a defendant was executed after he falsely confessed to murdering a man. Thomas A. Mullen, *Rule Without Reason: Requiring Independent Proof of the Corpus Delicti as a Condition of Admitting an Extrajudicial Confession,* 27 U.S.F. L.Rev. 385, 399–400 (1993) (citing *Perry's Case,* 14 How. St. Tr. 1311 (1660)). In *Perry's Case,* when the supposed victim disappeared one evening, and his hat was found "hacked and bloody," it was suspected that the defendant had murdered him. Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U. Pa. L.Rev. 638, 638 (1955). Following questioning, the defendant confessed that he had killed the "victim," and he also implicated his brother and mother in the crime. *Id.* at 638–39. All three were "tried, convicted, and executed." *Id.* at 639. Several years later, however, the "victim" appeared alive. *Id.* "This and similar cases led the British courts to question the sufficiency of confessions to prove that a crime had been committed." *Id.* In response to this concern, British courts developed a corroboration rule to help prevent such events from recurring.

¶ 14 At its inception, British courts applied this corroboration rule only to murder and bigamy cases. *Id.* at 640. Courts in the United States, however, extended the rule to apply to most crimes. *Id.* at 641. As early

---

1. An extrajudicial confession is a confession made out of court. *Black's Law Dictionary* 297 (6th ed.1990). The corpus delicti rule is inapplicable when a confession is made "before a magistrate or court in the due course of legal

proceedings." *Id.; accord* Corey J. Ayling, Comment, *Corroborating Confessions: An Empirical Analysis of Legal Safeguards Against False Confessions,* 1984 Wis. L.Rev. 1121, 1131.

as 1909, this court required corroborative evidence, independent of a defendant's confession, in all criminal trials. *State v. Wells,* 35 Utah 400, 409, 100 P. 681, 684 (1909), *overruled on other grounds, State v. Crank,* 105 Utah 332, 335, 142 P.2d 178, 188 (1943); *see also Weldon,* 6 Utah 2d at 375, 314 P.2d at 355 (stating that the corroboration rule "applie[s] to all crimes"). Thus, in the United States the rule has been extended well beyond its initial conception in England.

### B. The Orthodox Version of the Corroboration Rule: The Corpus Delicti Rule

¶ 15 The corroboration rule is most "often termed the '*corpus delicti*' rule because the orthodox version of the rule requires corroboration of the *corpus delicti,* or body of the crime." Ayling, *supra,* at 1124 n. 9. Here, the term "corpus delicti" means "evidence that the [charged] crime was committed." *Johnson,* 821 P.2d at 1162 n. 8 (citing *State v. Rebeterano,* 681 P.2d 1265, 1267–68 (Utah 1984)); *accord Weldon,* 6 Utah 2d at 376, 314 P.2d at 356. Therefore, corroboration of the corpus delicti means to produce corroborative "evidence that the specified offense occurred." *State v. Allen,* 839 P.2d 291, 301 (Utah 1992).

¶ 16 Generally, " '[t]o establish guilt' " in a criminal case, " 'the prosecution [must] show that [1] the injury or harm specified in the crime occurred, [2] this injury or harm was caused by someone's criminal activity, and [3] the defendant was the [perpetrator].' " *State v. Talbot,* 665 P.2d 1274, 1276 (Utah 1983) (citation omitted). The corpus delicti, or body of the crime, involves only the first two elements, however. *Id.* Hence, when the corpus delicti rule re-

quires corroboration of the corpus delicti, it requires only corroboration that a harm or injury occurred by criminal act. *Id.; see also Black's Law Dictionary* 344 (6th ed.1990). It does not require corroboration that the defendant was the perpetrator. *Talbot,* 665 P.2d at 1276. Nor does it require corroboration of any other element of the crime. *See State v. Archuleta,* 850 P.2d 1232, 1241–42 (Utah 1993); *State v. Cazier,* 521 P.2d 554, 555 (Utah 1974).

¶ 17 For example, in a homicide case, the State must produce evidence that a person died and that the death was caused by a criminal act in order to establish that an injury or harm occurred by criminal means. *Allen,* 839 P.2d at 301. Once it produces such evidence, however, the State may then introduce a defendant's confession to establish other elements of the crime, such as intent or malice. *See State v. Bishop,* 753 P.2d 439, 478 (Utah 1988), *overruled on other grounds, State v. Menzies,* 889 P.2d 393, 399 (Utah 1994).

¶ 18 Thus, once the State establishes the first two elements,[2] the defendant's confession may be admitted to otherwise establish guilt by (1) bolstering the evidence that has already been introduced, or (2) proving the third element—that the defendant was the perpetrator of the crime. *See Talbot,* 665 P.2d at 1276; *Johnson,* 821 P.2d at 1164–65. We currently adhere to the orthodox corpus delicti rule.

### C. New Version of the Corroboration Rule: The Trustworthiness Standard

¶ 19 Although we currently adhere to the orthodox corpus delicti rule, the federal courts and a growing number of state

---

2. Although the corpus delicti rule requires the State to introduce independent evidence that a crime occurred before a defendant's confession may be admitted, this burden of proof goes only to the quantum of proof "required to allow introduction of a defendant's confession." *Johnson,* 821 P.2d at 1162 n. 8. It does not address the quantum of proof necessary to establish guilt. Initially, we require the State to establish by clear and convincing evidence that the charged crime occurred before a confession may be admitted. *Id.* at 1163; *State v. Ferry,* 2 Utah 2d 371, 372, 275 P.2d 173, 173 (1954). This stan-

dard varies by state, however. Louisiana and Pennsylvania require a greater quantum of proof than we do, Mullen, *supra,* at 391 n. 30, although Pennsylvania has recently questioned whether they should retain their high standard, *Commonwealth v. Persichini,* 558 Pa. 449, 737 A.2d 1208, 1211–12 (1999). In most other states, once the prosecution makes a low threshold showing that a crime occurred, a confession may be admitted to help bolster the evidence and establish guilt beyond a reasonable doubt. *See* Mullen, *supra,* at 390–91 & nn. 22–30.

courts have adopted a different version of the corroboration rule. Unlike the orthodox version of the corroboration rule, the new version focuses on the confession itself. *Parker*, 337 S.E.2d at 492, 494. Specifically, " 'the adequacy of corroborating [evidence] is measured not by its tendency to establish the corpus delicti but by the extent to which it supports the trustworthiness of the admissions.' " *Id.* at 492 (quoting *United States v. Johnson*, 589 F.2d 716, 718–19 (D.C.Cir.1978)). Thus, the new version of the corroboration rule has been termed the "trustworthiness standard." *See id.* Most jurisdictions that have adopted this standard recognize that it is the responsibility of the trial judge to determine as a matter of law whether a defendant's confession is sufficiently trustworthy or reliable to be admitted into evidence. *United States v. Dickerson*, 163 F.3d 639, 642 (D.C.Cir.1999); *United States v. Singleterry*, 29 F.3d 733, 737 (1st Cir.1994); *State v. George*, 109 N.H. 531, 257 A.2d 19, 21 (1969).

¶ 20 The State is urging us to abandon the orthodox corpus delicti rule and to replace it with the trustworthiness standard. For the reasons discussed below, we are persuaded that the orthodox corpus delicti rule should be replaced by the trustworthiness standard.

## III. INHERENT WEAKNESSES OF THE ORTHODOX CORPUS DELICTI RULE

¶ 21 It is beyond dispute that some people falsely confess to committing a crime that was never committed or was committed by someone else. *See* Richard A. Leo & Richard J. Ofshe, *Criminal Law: The Consequences of False Confessions: Deprivations of Liberty and Miscarriages of Justice in the Age of Psychological Interrogation*, 88 J.Crim. L & Criminology 429, 432–33 & n. 10 (1998); Richard J. Ofshe & Richard A. Leo, *The Decision to Confess Falsely: Rational Choice and Irrational Action*, 74 Denv. U.L.Rev. 979, 983 (1997). Because "the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made," *Smith v. United States*, 348 U.S. 147, 153, 75 S.Ct.

194, 99 L.Ed. 192 (1954) (citation omitted), "the doubt persists that ... the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession." *Opper v. United States*, 348 U.S. 84, 89–90, 75 S.Ct. 158, 99 L.Ed. 101 (1954). This is particularly true with respect to those who have a mental disease or deficiency, "those who lack fluency in the language in which they confess," and those who fail to comprehend "the legal significance of their actions and words." Mullen, *supra*, at 402 & n. 79. We conclude, however, that the corpus delicti version of the corroboration rule inadequately safeguards individuals from the consequences of their false confessions for the reasons discussed below.

### A. Corpus Delicti Rule Does Not Guard Against Innocent Persons Falsely Confessing to Actual Crimes

¶ 22 One of the inherent weaknesses of the corpus delicti rule is that it "serve[s] an extremely limited function." *Smith*, 348 U.S. at 153, 75 S.Ct. 194. It aspires to prevent innocent persons from being convicted when they falsely confess to committing " 'a crime that was never committed.' " *State v. Parker*, 315 N.C. 222, 337 S.E.2d 487, 491 (N.C. 1985) (quoting *State v. Franklin*, 308 N.C. 682, 304 S.E.2d 579, 586 (1983)); *accord State v. Johnson*, 821 P.2d 1150, 1162 (Utah 1991) (citing *State v. Weldon*, 6 Utah 2d 372, 373, 314 P.2d 353, 354 (1957)). While this is important, there seems to be little distinction between convicting a person for a crime that was never committed and convicting a person for a crime that was committed by someone else. *Parker*, 337 S.E.2d at 494 (citing *State v. Lucas*, 30 N.J. 37, 152 A.2d 50, 60 (1959)). Yet, the rule does not protect innocent individuals from being wrongly convicted when they falsely confess to committing a crime that was committed by another.

¶ 23 Once the State establishes injury by criminal act, the corpus delicti rule is satisfied and no longer operates to bar the admission of a confession. Thus, in situations where there is independent proof of the crime, but "no proof as to the perpetrator," a defendant's false confession may be used to establish one of the most important elements necessary for conviction—the identity of the

perpetrator. *Lucas,* 152 A.2d at 60. This is true even if there is no other evidence linking the defendant to the crime. Hence, the rule does nothing to ensure that a particular defendant was the perpetrator of the crime. Given that one of the dangers with false confessions "is not so much that . . . persons will confess to non-criminal occurrences but rather to crimes committed by some one other than themselves," *id.,* the rule's limited application is unsound.

### B. Corpus Delicti Rule Inadequately Protects the Innocent Because It Focuses on the Body of the Crime Rather than the Confession

¶ 24 Another weakness of the corpus delicti rule is that it focuses solely on whether a crime occurred instead of on whether a confession was true or false. Since originally the rule was designed to detect false confessions, this focus is misplaced. The rule requires the State to introduce evidence, apart from the defendant's confession, that (1) a harm or injury occurred, and (2) the harm or injury occurred by a criminal act. *Johnson,* 821 P.2d at 1164; *State v. Talbot,* 665 P.2d 1274, 1276 (Utah 1983). However, once the State introduces evidence "supporting the occurrence of [a] crime," Mullen, *supra,* at 405, a defendant's confession may be used to bolster the evidence and establish guilt beyond a reasonable doubt. *See Johnson,* 821 P.2d at 1164–65; *Talbot,* 665 P.2d at 1276.

¶ 25 The belief seems to be that if the State can introduce independent evidence supporting the occurrence of the charged crime, a confession about the crime must be reliable. Ayling, *supra,* at 1128. The assumption is that the supporting evidence proves the "confession was not the imaginary product of a mentally diseased or deficient mind." *Lucas,* 152 A.2d at 60.

¶ 26 Although theoretically this reasoning seems tenable, the very case to which historians attribute the rule's creation shows that merely to establish that a crime has been committed does not necessarily establish that a confession was true or trustworthy. In *Perry's Case,* a man was "waylaid, kidnapped, and held as a slave in Turkey."

Ayling, *supra,* at 1126 n. 13. During the course of the ambush and kidnapping, the victim's hat was hacked, bloodied, and left behind. Note, *supra,* at 638. Following the discovery of this piece of evidence, searchers believed the victim had been murdered, and authorities were able to induce a suspect to confess to committing the wholly imaginary crime. *Id.* Thus, the independent evidence, alone, was insufficient to ensure that the suspect's confession was reliable.

¶ 27 Particularly when a person is missing, it may appear as though a given crime was committed when in truth it was not.[3] Yet, if a person falsely confesses to the supposed crime after hearing about it through the news media, or after being brought in for questioning as a suspect, the rule likely would not preclude the confession from being used to establish guilt due to the independent evidence of the supposed crime. The corpus delicti rule is ill-suited to detecting such false confessions, though, because it focuses only on the evidence and not the confession. Hence, even though the rule's purpose is to prevent innocent persons from being convicted for a crime that never occurred, the rule's inherent design fails to adequately address the evil at which it is aimed.

### C. Corpus Delicti Rule May Work to Obstruct Justice

¶ 28 In addition to failing to adequately protect the innocent from the consequences of their false confessions, the corpus delicti rule potentially operates to obstruct justice. Professor McCormick "submitted that hard-and-fast rules requiring corroboration are as likely to obstruct the punishment of the guilty as they are to safeguard the innocent." *Lucas,* 152 A.2d at 57 (quoting Charles Tilford McCormick, *McCormick on Evidence* 230 n. 5 (1954)). This seems particularly true when a crime lacks a tangible injury.

¶ 29 For example, in *State v. Ray,* 130 Wash.2d 673, 926 P.2d 904, 905 (1996), a man voluntarily confessed that he molested his three-year-old daughter by forcing her to fondle him. Absent his confession, there was no independent evidence of the crime because the child was deemed incompetent to

---

**3.** See Leo & Ofshe, *supra,* at 449–51, for a discussion of more recent cases involving individuals who have falsely confessed to committing non-existent crimes after being confronted with independent evidence that seemed to support that a given crime had occurred.

testify. *Id.* Since the State could not satisfy the corpus delicti rule, charges against the man were dismissed. *Id.* Because inappropriate sexual contact often produces no tangible injury, applying the corpus delicti rule to such situations seems especially troublesome.

¶ 30 Infanticide by suffocation presents another area where the corpus delicti rule has been troublesome. The rule may preclude convicting an individual who voluntarily confesses to smothering a child because "as is often the case with death by smothering, there [is] no way to determine conclusively whether the death was by natural causes or was a homicide." Catherine L. Goldenburg, *Comment: Sudden Infant Death Syndrome as a Mask for Murder: Investigating and Prosecuting Infanticide,* 28 Sw. U.L.Rev. 599, 621 (1999) (citing *State v. Reed,* 676 A.2d 479, 480 (Me.1996)). This is problematic because the second element of the corpus delicti rule requires the State to show that the harm or injury occurred by criminal act. *Johnson,* 821 P.2d at 1164; *Talbot,* 665 P.2d at 1276. Therefore, unless the State is able to show by clear and convincing evidence "that the death resulted from criminal conduct rather than by accident or from natural causes," *State v. Allen,* 839 P.2d 291, 301–02 (Utah 1992) (quotation and citation omitted), a defendant's confession will be inadmissible and the defendant may escape conviction, *see State v. Aten,* 130 Wash.2d 640, 927 P.2d 210, 222, 225 (1996) (excluding a voluntary confession because the State could not establish that the infant's death was by criminal act rather than natural causes).

¶ 31 These and other similar situations[4] cause concern because "safeguards for the accused should not be turned into obstacles whereby the guilty can escape just punishment." *Lucas,* 152 A.2d at 61. As early as 1957, this court expressed concern about the corpus delicti rule and cautioned that it should not "be used as a technical obstruction to the administration of justice." *State v. Weldon,* 6 Utah 2d 372, 376, 314 P.2d 353, 356 (1957). As long as we adhere to this version of the corroboration rule, however, it is difficult to see how such consequences can be avoided.

¶ 32 The corpus delicti rule obstructs justice, in part, because it makes "irrational distinctions and [yields] incongruous results." *American Fork City v. Crosgrove,* 701 P.2d 1069, 1074 (Utah 1985) (abandoning a different rule because it yielded irrational results). For example, the rule fails to provide a "rational reason" why a person cunning enough to hide evidence should not "be confronted with his voluntary confession while" a more careless criminal should be. *State v. McMahan,* 451 Mich. 543, 548 N.W.2d 199, 206 (1996) (Boyle, J., dissenting). Moreover, it "bars concededly voluntary confessions," yet fails to "block the admission of dubious confessions." Mullen, *supra,* at 405. Balancing the modest protection the rule affords the innocent against its detrimental effect on the administration of justice, we conclude the rule is ineffective.

¶ 33 Moreover, since the rule's weaknesses were present from its inception, we conclude the rule was ill-conceived and originally erroneous. When a rule was originally erroneous, we are not inexorably bound to retain it. Nor are we precluded from replacing the rule with one that is more sound. Furthermore, as will be discussed below, changed conditions since the advent of the rule provide additional support "that more good than harm will come by departing from precedent." *State v. Menzies,* 889 P.2d 393, 399 (Utah 1994). We turn now therefore to a discussion of how changed conditions have supplanted any need for the rule.

## IV. THE CORPUS DELICTI RULE IS NO LONGER NECESSARY DUE TO CHANGED CONDITIONS

### A. Newly Recognized Constitutional and Procedural Safeguards Militate Against Coercive Police Practices and Encourage More Effective Law Enforcement

¶ 34 An underlying goal of the corpus delicti rule is " 'to minimize the weight of a

---

4. Income tax evasion, solicitation, conspiracy, certain attempt crimes, offering to sell narcotics, and the promotion of gambling are other examples of crimes involving intangible injuries that do not easily fit under the corpus delicti rule. *State v. Daugherty,* 173 Ariz. 548, 845 P.2d 474, 477–78 (Ct.App.1992) (excluding application of the corpus delicti rule to crimes where "the statements themselves are the *corpus delicti* of the defined crime") (citing Charles Tilford McCormick, *McCormick on Evidence* § 145, at 560 (John W. Strong ed., 4th ed.1992)).

confession and [to] require collateral evidence to support a conviction.' " *McMahan*, 548 N.W.2d at 201 (citation omitted). The goal of minimizing the weight of a confession "likely betrays a concern about" whether a confession was freely and voluntarily given, Mullen, *supra*, at 404, since historically " 'confessions have often been extorted to save law enforcement officials the trouble and effort of obtaining valid and independent evidence,' " *Escobedo v. Illinois*, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (quoting *Haynes v. Washington*, 373 U.S. 503, 519, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)).

¶ 35 Subsequent to the advent of the corpus delicti rule, however, the United States Supreme Court has recognized additional procedural and constitutional safeguards to protect against coerced confessions. These safeguards help encourage better law enforcement because police must seek out independent evidence "through skillful investigation," rather than relying on confessions obtained through abusive police practices. *Id.* at 488–89, 84 S.Ct. 1758. Hence, although we remain mindful of the need to ensure that confessions are voluntary, retaining the corpus delicti rule for this purpose is unnecessary due to the additional safeguards discussed below.

### 1. Prohibiting Coercive Physical and Psychological Interrogations

¶ 36 In 1936, the United States Supreme Court held that confessions elicited by physical force or duress constituted a fundamental wrong that could not be tolerated under the Constitution's procedural due process requirements. *Brown v. Mississippi*, 297 U.S. 278, 286–87, 56 S.Ct. 461, 80 L.Ed. 682 (1936). Prior to this pronouncement, the "dangers of false confessions" were high because "police violence and the 'third degree' flourished." *Miranda v. Arizona*, 384 U.S. 436, 445, 447, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (citations omitted).

¶ 37 Following the Court's decision in *Brown*, police substituted coercive psychological methods in place of brute force. *See id.* at 448, 86 S.Ct. 1602. It was not uncommon for suspects to be subjected to prolonged and repeated questioning, while being denied sleep, legal advice, and contact with friends or family. *See Haynes*, 373 U.S. at 514–15, 83 S.Ct. 1336; *Spano v. New York*, 360 U.S. 315, 322–23, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); *Watts v. Indiana*, 338 U.S. 49, 52–53, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); *Chambers v. Florida*, 309 U.S. 227, 231, 238, 60 S.Ct. 472, 84 L.Ed. 716 (1940). Again the Court stepped in to curb such abusive practices by finding each of these tactics unconstitutional.

¶ 38 In a series of cases, the Court deemed unconstitutional "[p]rotracted, systematic and uncontrolled subjection of an accused to interrogation by the police for the purpose of eliciting disclosures or confessions," especially when coupled with denying the accused of sleep and contact with friends or family. *Watts*, 338 U.S. at 52–53, 55, 69 S.Ct. 1347; *see also Haynes*, 373 U.S. at 514–15, 83 S.Ct. 1336; *Chambers*, 309 U.S. at 231, 238, 60 S.Ct. 472.

### 2. Extending the Right to Counsel

¶ 39 In addition to prohibiting coercive interrogations, the Court recognized the need for suspects to have counsel available to them during custodial interrogations because "most confessions are obtained during the period between arrest and indictment." *Escobedo*, 378 U.S. at 488, 490–91, 84 S.Ct. 1758. Furthermore, the Court determined that having counsel present "when statements are taken from an individual during interrogation ... enhances the integrity of the fact-finding processes." *Miranda*, 384 U.S. at 466, 86 S.Ct. 1602. Thus, since 1964 police may no longer deny an accused the presence of an attorney while trying to elicit a confession during a custodial interrogation.

### 3. Prophylactic Procedural Measures

¶ 40 Next, the Court introduced a prophylactic rule to further dispel the likelihood of coerced confessions. In *Miranda*, the Court mandated that "[p]rior to any [custodial] questioning" police officers must inform suspects of their constitutional right to remain silent and to have the assistance of counsel. *Id.* at 444, 86 S.Ct. 1602. Furthermore, the Court specified that if a person "indicates in

any manner that he does not wish to be interrogated," questioning must cease. *Id.* at 445, 86 S.Ct. 1602. Finally, the Court held that if a suspect requests counsel, no further questioning may occur until counsel is provided. *Id.* at 444–45. Each of these procedural requirements helps guard against police officers "trad[ing] on the weakness of individuals" to obtain a confession. *Id.* at 455, 86 S.Ct. 1602.

¶ 41 In addition to these safeguards, courts also play a role in protecting against involuntary confessions when they look at the totality of the circumstances under which a confession was made to ensure it was voluntary. *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960) (citing *Fikes v. Alabama,* 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957)). Thus, through the passage of time, we now have procedural and constitutional safeguards that were not recognized at the advent of the corpus delicti rule.[5] These safeguards amply guard against coerced confessions and make the corpus delicti rule unnecessary.

*B. Corpus Delicti Rule Is Unworkable in an Age Where Statutory Crimes Have Become Increasingly Complex and Numerous*

¶ 42 As early as 1909, this court applied the corpus delicti rule to all crimes. Thus, in all criminal trials the State is required to introduce evidence, independent of a defendant's confession, that a harm or injury occurred by someone's criminal act. *See State v. Wells,* 35 Utah 400, 409, 100 P. 681, 684 (1909); *see also State v. Weldon,* 6 Utah 2d 372, 374, 314 P.2d 353, 355 (1957) (stating that the corroboration rule "applie[s] to all crimes"). Since then, however, the classes of crime have become more numerous and " 'modern statutes tend to define offenses more precisely and in greater detail than traditional case law.' " *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487, 493 (1985) (citation omitted). As a result, defining the *corpus*

*delicti,* or in other words, defining what the State must show to establish that the charged crime was committed before a confession may be admitted, *State v. Johnson,* 821 P.2d 1150, 1162 n. 8 (Utah 1991) (citing *State v. Rebeterano,* 681 P.2d 1265, 1267–68 (Utah 1984)); *Weldon,* 6 Utah 2d at 376, 314 P.2d at 356, has become more difficult and it has made the rule even more unworkable.

¶ 43 For example, in Utah "[a] person is guilty of capital murder" if he or she "intentionally or knowingly causes the death of another under any of seventeen different aggravating circumstances." *State v. Archuleta,* 850 P.2d 1232, 1241 (Utah 1993) (citing Utah Code Ann. § 76–5–202 (1999)). One of the aggravating circumstances is that "the homicide was committed" during the course of a robbery. Utah Code Ann. § 76–5–202(1)(d). Although a person cannot be convicted of capital murder unless the aggravating circumstance is proved, we specified in *Archuleta* that evidence of the aggravating circumstance, namely, the robbery in that case, was not "part of the corpus delicti." Thus, under the corpus delicti rule, the State did not have to establish this element before a confession could be admitted to otherwise establish guilt.

¶ 44 Other jurisdictions, however, have not taken the same approach. In *Roach v. Commonwealth,* 251 Va. 324, 468 S.E.2d 98, 110 (1996), the court held that because both the corpus delicti of a homicide and the corpus delicti of robbery were established by independent evidence, the corpus delicti of capital murder was sufficiently corroborated. Thus, unlike this court, Virginia requires corroboration of the predicate offense and the homicide to establish the corpus delicti of capital murder. *See id.; Maxwell v. State,* 828 So.2d 347, 358 (Ala.Crim.App.2000). Hence, what constitutes the corpus delicti of a crime is not always readily apparent.

¶ 45 Because the rule is ill-equipped to adapt to the changing face of criminal law,

---

**5.** Moreover, "[t]he reasonable-doubt standard [also] plays a vital role" in "reducing the risk of convictions resting on factual error." *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In 1970, this standard was explicitly recognized as being constitutionally

mandated. *Id.* at 364, 90 S.Ct. 1068 (holding that the reasonable-doubt standard is constitutionally mandated by the Due Process Clause). Thus, defendants have another layer of protection in our criminal justice system beyond what has already been mentioned above.

courts are faced with either selectively applying the rule to certain crimes or abandoning it for all crimes. *See State v. Daugherty*, 173 Ariz. 548, 845 P.2d 474, 477–78 (Ct.App.1992) (excluding application of the corpus delicti rule to various crimes). We note that numerous exceptions can soon subsume a rule, however. Thus, we conclude the better approach is to abolish the rule rather than trying to "work around the rule to achieve justice." Mullen, *supra*, at 417.

¶ 46 In summary, we conclude the corpus delicti rule was originally erroneous because it inadequately protects the innocent, yet allows the guilty to go free. Furthermore, additional procedural and constitutional safeguards that have been recognized since the rule's inception make the rule unnecessary. Finally, the changing face of criminal law also supports abolishing the rule because the changes have made the rule more unworkable. Each of these factors persuade us that more good than harm will come from abolishing the rule. *See State v. Menzies*, 889 P.2d 393, 399 (Utah 1994). Moreover, we note the rule is a judge-made rule, not a constitutionally mandated rule. Mullen, *supra*, at 387. Thus, we are not constitutionally bound to retain it. We therefore overturn the corpus delicti rule.

¶ 47 Although we overturn the corpus delicti rule, we are not eliminating the corroboration rule because we recognize the need still exists "to prevent 'errors in convictions based upon untrue confessions alone.' " *United States v. Dickerson*, 163 F.3d 639, 641 (D.C.Cir.1999) (quoting *Smith v. United States*, 348 U.S. 147, 153, 75 S.Ct. 194, 99 L.Ed. 192 (1954)) (other citations omitted). We conclude, however, that the newer version of the corroboration rule, namely the trustworthiness standard, is a better rule of law to address this issue and we adopt it as our standard. We therefore turn now to a discussion of the trustworthiness standard.

## V. TRUSTWORTHINESS STANDARD

¶ 48 The United States Supreme Court established the trustworthiness standard in two cases issued on the same day in 1954. *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954); *Smith v.*

*United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954). The standard differs from the corpus delicti rule because it requires corroboration of the confession itself rather than corroboration that a crime was committed. *See State v. Parker*, 315 N.C. 222, 337 S.E.2d 487, 492, 494 (1985). We use the Court's standard as a model.

### A. Formulation of the Trustworthiness Standard

¶ 49 Under the trustworthiness standard, the State must still establish "[a]ll elements of the offense." *Smith*, 348 U.S. at 156, 75 S.Ct. 194. However, the elements may be established by independent evidence of the crime, a corroborated confession, or a combination of both. *Id.* Thus, the State does not have to provide independent evidence that a harm or injury occurred by criminal act before a confession may be admitted to help establish guilt.

¶ 50 Before it can introduce a defendant's confession, however, the State must "introduce substantial independent evidence which would tend to establish the trustworthiness of the [confession]." *Opper*, 348 U.S. at 93, 75 S.Ct. 158. Stated differently, the independent evidence must strengthen and add weight or credibility to the confession, *United States v. Corona–Garcia*, 210 F.3d 973, 979 n. 4 (9th Cir.2000) (quoting *Black's Law Dictionary* 344 (6th ed.1990)), so as "to produce a confidence in the truth of the confession," John Henry Wigmore, *Wigmore on Evidence* § 2071, at 511 (1978). Hence, the precept still stands that "*no* defendant can be convicted [solely] on the basis of an uncorroborated out-of-court [confession]." *United States v. Dickerson*, 163 F.3d 639, 641 (D.C.Cir.1999).

1. Establishing Trustworthiness When There Is No Independent Evidence that a Crime Occurred

¶ 51 Substantial independent evidence supporting the trustworthiness of a confession need not necessarily include independent evidence of the crime. In cases such as this one, where there is no evidence of a crime independent of the confession, the

State may nevertheless "establish the trustworthiness of the confession with other evidence typically used to bolster the credibility and reliability of an out-of-court statement." *United States v. Singleterry*, 29 F.3d 733, 737 n. 3 (1st Cir.1994).

¶ 52 Factors used in other areas of the law to bolster the credibility and reliability of an out-of-court statement include the following: evidence as to the spontaneity of the statement; the absence of deception, trick, threats, or promises to obtain the statement; the defendant's positive physical and mental condition, including age, education, and experience; and the presence of an attorney when the statement is given. *See State v. Ramirez*, 817 P.2d 774, 782–83 (Utah 1991); *United States v. Gordon*, 638 F.Supp. 1120, 1145 (W.D.La.1986). We conclude that these factors also have applicability in determining the trustworthiness of confessions.

▉ ¶ 53 We emphasize, however, that since a demonstrably wrong statement may indicate that a confession is false, Leo & Ofshe, *supra*, at 438–40, the overall facts and circumstances related in the confession must be consistent with " 'facts otherwise known or established,' " *State v. Lucas*, 30 N.J. 37, 152 A.2d 50, 59 (1959) (citation omitted). For example, if a man spontaneously confesses that he fondled a child, but the evidence demonstrates he was never in physical proximity with the child, his confession is likely untrustworthy because the facts related in the confession are inconsistent with otherwise known or established facts.

2. Establishing Trustworthiness When There Is Independent Evidence

¶ 54 At times, there may be substantial independent evidence of a crime but not of the perpetrator's identity. Or, there may be independent evidence of a crime and the perpetrator, but not enough to establish guilt. In such situations, the independent evidence itself may "bolster the confession . . . and thereby prove the offense 'through' the statements of the accused." *Smith*, 348 U.S. at 156, 75 S.Ct. 194. One of the ways a confession may be bolstered by independent evidence is by showing a person's confession demonstrates the individual has specific personal knowledge about the crime. *See* Leo & Ofshe, *supra*, at 438.

¶ 55 While not exclusive, three factors tending to demonstrate personal knowledge include the following: (1) providing information that "lead[s] to the discovery of evidence unknown to the police," (2) providing information about "highly unusual elements of the crime that have not been made public," and (3) providing "an accurate description of the mundane details of the crime scene which are not easily guessed and have not been reported publicly," because "mundane details [are] less likely to be the result of [suggestion] by the police." *Id.* at 438–40. Examples of mundane details may include the following: "how the victim was clothed, disarray of certain furniture pieces, presence or absence of particular objects at the crime scene," "or which window was jimmied open." *Id.* at 439; *see also Lucas*, 152 A.2d at 61 (finding defendant's knowledge about the time of a fire, where the fire started, and the layout and contents of the room in which the fire originated was sufficient to corroborate his confession).

▉ ¶ 56 Here, too, the degree of "fit between the specifics of a confession and the crime facts" is critical because the "fit" determines whether a confession should be deemed trustworthy. Leo & Ofshe, *supra*, at 438. If a person merely provides information already known by the police or the public, or if the information provided is inaccurate, a confession may be untrustworthy. *Id.* at 439.

B. Trial Judge as Gatekeeper

▉ ¶ 57 Generally, the Utah Rules of Evidence allow the State to use a defendant's out-of-court statement against him or her. Utah R. Evid. 801(d)(2). The corpus delicti rule, however, imposed an additional requirement that the *corpus delicti* had to be proved before a confession could be admitted. Although we no longer adhere to the corpus delicti rule, we recognize that "no other class of evidence is as potentially prejudicial to defendants as confessions." Stephen A. Saltzburg, *Standards of Proof and Prelimi-*

*nary Questions of Fact*, 27 Stan. L.Rev. 271, 293 (1975).

¶ 58 Thus, we hold that before a confession may be admitted, the trial court must determine as a matter of law that the confession is trustworthy. When making its determination, the trial court must review the totality of the circumstances. Only after a confession is deemed trustworthy by a preponderance of the evidence may it be admitted into evidence.[6]

¶ 59 Furthermore, the trustworthiness standard does not obviate the trial court's responsibility to ensure a confession is admissible under the other rules of evidence or "as a matter of constitutional law under decisions such as *Miranda v. Arizona*." Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* § 8–23 (1996) (discussing holding in *State v. Maurer*, 770 P.2d 981, 982–84 (Utah 1989), "that although the part of the letter written by the defendant that included a confession to a killing [was] admissible against him in a criminal prosecution, the judge abused his discretion in admitting the rest of the letter, that primarily showed lack of remorse after the killing").

¶ 60 Although the trial court must determine as a matter of law whether a confession is sufficiently trustworthy to be admitted into evidence, this does not "preclude[ ] the jury from independently assessing the weight it wishes to attribute to the [confession]." *Dickerson*, 163 F.3d at 643 (citation omitted). It is important to note, however, that "[t]he jury's role is not to reconsider the judge's [trustworthiness] determination . . ., but rather to determine for itself whether [a confession] . . . is sufficiently trustworthy" for consideration. *Id.*

¶ 61 In summary, we adopt the trustworthiness standard in place of the corpus delicti rule. Under the trustworthiness standard, the State must introduce substantial independent evidence that tends to establish the trustworthiness of a defendant's confession before it may be admitted into evidence. Additionally, the trial judge must determine as a matter of law that the confession is trustworthy before it may be admitted. A jury may nevertheless still consider for itself the weight it wishes to give to the confession. Finally, a defendant may not be convicted unless there exists independent evidence of the crime, a corroborated confession, or a combination of both that "furnishes proof beyond a reasonable doubt" that the defendant is guilty of the crime charged. *Harris*, 575 A.2d at 227. Having adopted the trustworthiness standard, we turn to the facts of this case.

## VI. TRUSTWORTHINESS OF MAUCHLEY'S CONFESSION

¶ 62 Mauchley filed an insurance claim and received a settlement based on that claim. Approximately six months after receiving the settlement, Mauchley entered a police station on his own volition and voluntarily confessed that his insurance claim was false. Absent his confession, there is no independent evidence that a crime occurred because merely filing an insurance claim and receiving a settlement do not constitute criminal acts.

¶ 63 The State concedes it has insufficient independent evidence to convict Mauchley under the corpus delicti rule. It argues nevertheless that the court of appeals erred in reversing the denial of Mauchley's motion to dismiss because "[s]ubstantial independent evidence tended to establish the trustworthiness of [his] confession." It further argues that since his confession was trustworthy, it was proper for the district court to consider his confession and to deny the motion to dismiss. While the State may be correct that Mauchley's confession was trustworthy, we decline to address its argument because the Ex Post Facto Clause of the United States Constitution prohibits application of

6. We note that this same gatekeeping function is required by other jurisdictions that have adopted the trustworthiness standard, *see United States v. Dickerson*, 163 F.3d 639, 642 (D.C.Cir.1999); *United States v. Singleterry*, 29 F.3d 733, 737 (1st Cir.1994); *State v. Harris*, 215 Conn. 189, 575 A.2d 223, 225 (1990); *State v. George*, 109 N.H. 531, 257 A.2d 19, 21 (1969), and is akin to a trial court's responsibilities when making a determination about the voluntariness of a confession. *State v. Hansen*, 2002 UT 125, ¶¶ 51, 56–57, 63 P.3d 650.

the trustworthiness standard to Mauchley's case.

### A. Types of Criminal Laws to Which the Ex Post Facto Clause Applies

 ¶ 64 According to the United States Supreme Court, the Ex Post Facto Clause applies to

[1] [e]very law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action[;] [2] [e]very law that aggravates a crime, or makes it greater than it was, when committed[;] [3] [e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[;] and [4] *[e]very law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.*

*Carmell v. Texas*, 529 U.S. 513, 522, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (emphasis added) (original italics removed) (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (Chase, J.)). Category four has created some confusion among courts because it does not apply to mere procedural changes in the rules of evidence. *Collins v. Youngblood*, 497 U.S. 37, 45, 47, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Distinguishing between a mere procedural change versus a change in the *"legal* rules of evidence," *Carmell*, 529 U.S. at 522, 120 S.Ct. 1620, however, has proven to be difficult, *see Collins*, 497 U.S. at 47, 110 S.Ct. 2715 (citations omitted) (noting the confusion that has existed among courts regarding this issue).

¶ 65 Procedural changes refer to "changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Id.* at 45, 110 S.Ct. 2715. Such changes often affect the admissibility of evidence, but not the sufficiency of the evidence required to convict.

*See Carmell*, 529 U.S. at 545 n. 23, 120 S.Ct. 1620.

¶ 66 Here, our challenge is to determine whether the trustworthiness standard altered an admissibility rule or a sufficiency of the evidence rule. Only if it altered a sufficiency of the evidence rule is the Ex Post Facto Clause implicated. To make this determination, we turn to a recent United States Supreme Court case that addressed *Calder's* fourth category.

### B. Application of Calder's Fourth Category

¶ 67 In *Carmell v. Texas*, 529 U.S. 513, 516, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000),[7] a man was convicted on fifteen counts of sexual abuse against his stepdaughter. At the time he committed four of the offenses, Texas law specified that a person could not be convicted on the uncorroborated testimony of a victim if the victim was fourteen years or older when the offense occurred. *Id.* at 517, 120 S.Ct. 1620. To convict Carmell on these four counts, the State had to either introduce evidence corroborating the testimony or show that "the victim informed another person of the offense within six months of its occurrence." *Id.* Thereafter, Texas changed its law to allow conviction based on the uncorroborated testimony of a victim as long as the victim was less than eighteen at the time of the offense. *Id.* at 518, 120 S.Ct. 1620.

¶ 68 Under the old law, the defendant could not be convicted based on his stepdaughter's uncorroborated testimony because she was older than fourteen at the time of the offenses. *Id.* at 519, 120 S.Ct. 1620. Under the amended law, he could be convicted because she was less than eighteen at the time of the offenses. *Id.* The defendant argued that the Ex Post Facto Clause precluded application of the amended law to his case, and therefore, he could not be convicted on those four counts. *Id.* The Court agreed. *Id.* at 530, 552, 120 S.Ct. 1620.

---

7. The difficulty in distinguishing between procedural and legal rules of evidence is demonstrated well by *Carmell* since it was a five to four majority decision. The dissent argued strongly against the Court's interpretation of the fourth *Calder* category, stating it was a departure from prece- dent. *See id.* at 575, 120 S.Ct. 1620 (Ginsburg, J., dissenting). Whether the dissent was accurate or not is irrelevant, however, because *Carmell* was a majority decision that has not been superceded. Thus, we are bound by its precedent.

¶ 69 Although the statute at issue did "not establish an element of the offense," it nevertheless went to the sufficiency of evidence necessary to sustain a conviction. *Id.* at 531, 120 S.Ct. 1620. By "[r]equiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence," the amendment "unquestionably" altered the quantum of evidence required to convict. *Id.* at 530, 120 S.Ct. 1620. Moreover, although only the quantum of evidence was lowered rather than the burden of proof, the Court held that "the two types of [changes were] indistinguishable in all meaningful ways relevant to concerns of the Ex Post Facto Clause." *Id.* at 541, 120 S.Ct. 1620 (italics removed). Hence, "reduc[ing] the quantum of evidence necessary to meet" a burden of proof, *id.*, implicated *Calder's* fourth category.

¶ 70 Next, the Court clarified that when *Calder's* fourth category referred to evidence " 'required . . . in order to convict,' " it was not referring to evidence that was *necessary* to convict in *every case*. *Id.* at 548–49, 120 S.Ct. 1620 (citation omitted). Thus, the Court found it irrelevant that the amendment "did not change the quantity of proof necessary to convict" in all cases of sexual abuse. *Id.* at 548, 120 S.Ct. 1620. Although " '[u]nder both the old and [amended] versions of the statute, a conviction could be sustained on the testimony of a single third-party witness, on purely circumstantial evidence, or in any number of other ways' . . . besides the victim's testimony," it did not alter the fact that the sufficiency of evidence necessary to convict was changed in cases where only the victim's uncorroborated testimony provided evidence of the crime. *Id.* (citation omitted).

¶ 71 Finally, the Court found that although the statute involved both admissibility and sufficiency of the evidence components, the relevant question was whether the law changed the "evidence required *to convict.*" *Id.* at 551, 120 S.Ct. 1620. While at times the application of admissibility rules will result in acquittals, such rules do not specify what evidence is required to sustain a conviction. *Id.* In contrast, sufficiency of the evidence rules do address what evidence is required. *Id.* at 552, 120 S.Ct. 1620. Failure

to comply with sufficiency rules means there is insufficient evidence *"to convict by the force of that [rule] alone." Id.* at 552 n. 35, 120 S.Ct. 1620.

¶ 72 Moreover, the Court noted an additional difference between admissibility rules and sufficiency of the evidence rules:

> Ordinarily, when evidence that should have been excluded is erroneously admitted against a defendant, the trial court's error is remedied on appeal by reversing the conviction and remanding for a new trial. *A trial court's failure to comply with the requirements of [a sufficiency rule], by contrast, results not in a remand for a new trial, but in the reversal of conviction and remand for entry of an order of acquittal.*

*Id.* at 518 n. 2, 120 S.Ct. 1620 (internal citations omitted). With these principles in mind, we now evaluate whether the trustworthiness standard altered a sufficiency of the evidence rule.

*C. The Trustworthiness Standard Requires Less or Different Evidence to Convict than the Corpus Delicti Rule*

■ ¶ 73 Our adoption of the trustworthiness standard requires the State to produce less or different evidence to sustain a conviction than the corpus delicti rule. This is significant because *Calder's* fourth category addressed not only laws that changed the quantum of proof necessary to convict, but also laws that changed the nature of proof necessary to convict. *Id.* at 522, 120 S.Ct. 1620. Specifically, "[e]very law that alters the legal rules of evidence, and receives *less, or different,* testimony[ ] than the law required at the time of the commission of the offence, in order to convict the offender," implicates the Ex Post Facto Clause. *Id.*

¶ 74 Under the corpus delicti rule, the State had to produce clear and convincing evidence that a crime had occurred before a confession could be admitted. *State v. Johnson,* 821 P.2d 1150, 1163 (Utah 1991); *State v. Talbot,* 665 P.2d 1274, 1275 (Utah 1983). While the rule was not an element of the crime, failure to comply with its requirements necessitated acquittal by force of the rule itself. The court of appeals illustrated

this point when it applied the corpus delicti rule to this case and concluded that the charges against Mauchley should have been dismissed because the State failed to comply with the rule. *State v. Mauchley*, 2001 UT App 177, ¶¶ 1, 3. Hence, the corpus delicti rule operated in a similar manner to the statute in *Carmell*.

¶ 75 Under the trustworthiness standard, the State no longer has to produce independent evidence that a crime occurred before a confession may be admitted. Instead, the State must now introduce evidence that establishes the trustworthiness of a defendant's confession. If a confession is deemed trustworthy by a preponderance of the evidence it may be admitted to establish guilt even if there is no other evidence that a crime was committed.

¶ 76 Thus, we have changed the corroboration rule in two respects. First, we no longer require independent evidence of the crime before a defendant's confession may be admitted in order to establish guilt. Now, corroboration of the confession itself is sufficient to sustain a conviction. Second, we altered the quantum of proof the State must produce before a confession may be admitted; we changed the quantum of proof from clear and convincing evidence to a preponderance of the evidence. Hence, evidence that is sufficient to support a conviction now was insufficient to support a conviction before because the trustworthiness standard requires less or different evidence than what was required to convict under the corpus delicti rule. This supports the conclusion that the trustworthiness standard pertains to the sufficiency of the evidence necessary to obtain a conviction.

¶ 77 Moreover, several federal court decisions have held that the corroboration rule pertains to the sufficiency of the evidence. First, in *Warszower v. United States*, 312 U.S. 342, 347–48, 61 S.Ct. 603, 85 L.Ed. 876 (1941), the Supreme Court held that "[a]n uncorroborated confession ... does not as a matter of law establish beyond a reasonable doubt the commission of a crime." This statement supports the view that the corroboration rule pertains to the sufficiency of the evidence because an uncorroborated confession cannot sustain a conviction. Also, the

First Circuit recognized that "courts often characterize corroboration requirements as governing the *sufficiency* of the evidence." *United States v. Singleterry*, 29 F.3d 733, 738 (1994) (citing *Warszower*, 312 U.S. at 347–48, 61 S.Ct. 603; *United States v. O'Connell*, 703 F.2d 645, 647–48 (1st Cir.1983) (other citation omitted)). Finally, in *United States v. Dickerson*, 163 F.3d 639, 642 (D.C.Cir.1999), the court stated that the corroboration rule is "something of a hybrid rule having elements both of admissibility and sufficiency." *See also State v. Ray*, 130 Wash.2d 673, 926 P.2d 904, 908 (1996) (Talmadge, J., concurring) (arguing that the corpus delicti rule should be abandoned, contrary to the majority decision, but that it should be abandoned only prospectively due to the Ex Post Facto Clause).

¶ 78 Hence, we conclude the trustworthiness standard pertains not just to the admissibility, but also to the sufficiency of the evidence. Moreover, we conclude it has altered the sufficiency of the evidence that was required to convict under the corpus delicti rule because it requires less or different evidence than the corpus delicti rule required. As such, it falls under *Calder's* fourth category, and we are precluded from retroactively applying the trustworthiness standard. Hence, we affirm the court of appeals' decision that the district court erred in denying Mauchley's motion to dismiss.

## CONCLUSION

¶ 79 In summary, while we consider the corroboration rule to be an important safeguard to our system of justice, the corpus delicti version of the rule fails to adequately protect the innocent person who falsely confesses to an actual crime. The rule also inadequately addresses the evil at which it is aimed because it focuses on whether a crime occurred instead of on the trustworthiness of a defendant's confession. Thus, we conclude that the corpus delicti rule was erroneous at its inception. In addition, changed circumstances support the conclusion that even if the rule was not originally erroneous, it has outlived its usefulness.

¶ 80 Given the rule's limited usefulness in protecting the innocent, we conclude its detrimental effect on the administration of justice is too high. Moreover, we find that "we can best give effect to the substantial state interest involved" in protecting the public, "and at the same time adequately protect the rights of the individual," *American Fork City v. Crosgrove,* 701 P.2d 1069, 1075 (Utah 1985), through the trustworthiness standard. We therefore abandon the corpus delicti rule and replace it with the trustworthiness standard.

¶ 81 Under our interpretation of the Ex Post Facto Clause, however, the trustworthiness standard may only be applied prospectively. Hence, we affirm the court of appeals' decision that the district court erred in denying Mauchley's motion to dismiss.

¶ 82 Chief Justice DURHAM, Justice RUSSON, Justice WILKINS, and District Judge BACKLUND concur in Associate Chief Justice DURRANT's opinion.

¶ 83 Justice HOWE did not participate herein; District Court Judge JOHN BACKLUND sat.